**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
CoreLogic Credco, LLC

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Marlene Steinberg, individually and as a representative of the class

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**03/07/2022** at 07:17:00 AM
Clerk of the Superior Court
By Mariejo Guyot, Deputy Clerk

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court of the State of California, County of San Diego, 330 W Broadway, San Diego, CA 92101

CASE NUMBER: *(Número del Caso):*
37-2022-00007173-CU-MC-CTL

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Sophia Rios, Berger Montague PC, 401 B St., Ste. 2000, San Diego, CA 92101; 619-489-0300

| DATE: 03/10/2022 | Clerk, by | m. *(signature)* M. Guyot | , Deputy |
|---|---|---|---|
| *(Fecha)* | *(Secretario)* | | *(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* CoreLogic Credco, LLC
   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
02/24/2022 at 09:26:54 AM
Clerk of the Superior Court
By Carolina Miranda, Deputy Clerk

Sophia Rios, SBN 305801
BERGER MONTAGUE PC
401 B Street, Suite 2000
San Diego, CA 92101
T. 619.489.0300
F. 215.875.4604
srios@bm.net

*Attorney for Plaintiff*

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF SAN DIEGO
### UNLIMITED CIVIL

| | |
|---|---|
| MARLENE STEINBERG, individually and as a representative of the Class,<br><br>Plaintiff,<br><br>vs.<br><br>CORELOGIC CREDCO, LLC,<br><br>Defendant. | Case No. 37-2022-00007173-CU-MC-CTL<br><br>**CLASS ACTION COMPLAINT**<br><br>(I) Failure to Maintain Reasonable Procedures to Assure Maximum Possible Accuracy, 15 U.S.C. § 1681e(b)<br><br>**DEMAND FOR JURY TRIAL** |

1

CLASS ACTION COMPLAINT
Case No.

Marlene Steinberg ("Plaintiff" or "Ms. Steinberg"), who is a living, breathing consumer, brings this Class Action Complaint against CoreLogic Credco, LLC ("CoreLogic" or "Defendant"), on behalf of herself and the class set forth below:

## INTRODUCTION

1. This is a class action for violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, against a consumer reporting agency that falsely reports that consumers are deceased, even when it has clear evidence in its possession that the individuals in question are very much alive. This reporting has devastating consequences for individuals who are misreported as dead. Credit bureaus will not issue credit scores on deceased consumers, meaning that someone who is being falsely reported as deceased is unable to obtain credit. This problem is especially consequential for consumers who are seeking to obtain mortgage financing.

2. The computerization of our society has resulted in a revolutionary increase in the accumulation and automated processing of data concerning individual American consumers. Data technology allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should benefit from the resulting convenience and efficiency.

3. However, this information has also become available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage when inaccurate information is disseminated about them.

4. The technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are known as consumer reporting agencies ("CRAs").

5. The "Big Three" major national CRAs are Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union, LLC ("Trans Union").

6. The Big Three sell credit information to paying subscribers (i.e., lenders, retailers, landlords, potential employers, and others), commonly called "credit reports" or "consumer reports," concerning individuals who may be applying for a mortgage, other credit, housing, or employment.

7. The Big Three also sell credit information to "reseller" CRAs, such as Defendant, who assemble and merge the credit information obtained from each of the Big Three into a 3-bureau credit report, also known as a "tri-merge" or "merged infile" credit report. Defendant combines this information, adds its own summary of the Big Three's data, and then sells the completed report to mortgage lenders throughout the country.

8. In the parlance of the FCRA, both the information sold by the Big Three to the resellers and the information sold by resellers to the resellers' customers constitute "consumer reports." 15 U.S.C. § 1681a(d).

9. Lenders purchase tri-merge reports from resellers because they want to review credit information from all of the Big Three to ensure that they do not make loans based on an incomplete picture of the credit applicant's financial position. Information from all three agencies in a single report is easier for the lenders to process than three separate reports.

10. Lenders who use tri-merge reports rely on credit scores generated by running standard algorithms against *each* of the Big Three's credit files. Tri-merge reports contain three credit scores (one for each CRA), with the difference in scores being accounted for by variations among each CRA's data as well as differences in the scoring algorithms applied by each.

11. Since 1970, when Congress enacted the FCRA, federal law has required all CRAs, including resellers like Defendant, to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile, assemble, merge, and sell about individual consumers. 15 U.S.C. § 1681e(b).

12. One of the primary purposes in requiring CRAs and resellers to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

CLASS ACTION COMPLAINT
Case No.

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

13. The preservation of consumers' good names and reputations is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as *deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) (quoting 116 Cong. Rec. 36570 (1970)).

14. In light of these findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U.S.C. § 1681(a)(4).

15. Despite Congress's carefully crafted statutory protections, and despite being in possession of substantial evidence to the contrary, Defendant repeatedly reported living consumers as dead. In order to redress Defendant's illegal conduct, this class action lawsuit seeks statutory and punitive damages, costs and attorneys' fees for Plaintiff and the Class against Defendant for its willful violations of the FCRA by inaccurately reporting that Plaintiff and class members were deceased.

## THE PARTIES

16. Plaintiff Marlene Steinberg ("Plaintiff" or "Ms. Steinberg") is a natural person who lives in Philadelphia, Pennsylvania and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

17. Defendant CoreLogic Credco, LLC is a Delaware limited liability company with its principal office located at 10277 Scripps Ranch Blvd., San Diego, California.

18. CoreLogic is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f) of the FCRA. CoreLogic is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.

## JURISDICTION AND VENUE

19. This Court has jurisdiction over Plaintiff's claims pursuant to 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction, and CAL. CODE CIV. PROC. § 410.10.

20. Venue is proper in this Court because Defendant's principal office is in this County and a substantial part of the events or omissions giving rise to the claims occurred in this County.

## BACKGROUND

**CoreLogic's Process of Assembling and Merging Consumers' Credit Information into Tri-Merge Credit Reports**

21. The Big Three (Equifax, Experian, and Trans Union) regularly receive information from various sources around the country, including banks, credit unions, automobile dealers, student loan providers, public information vendors, the Social Security Administration, and others. These sources are known as "furnishers" within the credit reporting industry and under the FCRA. *See* 12 CFR § 1022.41.

22. The Big Three collect information from thousands of furnishers and distribute that information to their many subscribers, including Defendant. In industry parlance, information provided by a single furnisher and shown on a credit report is called a "tradeline." The "tradeline" is identified by preceding the word "tradeline" with the name of the furnisher who provided the information. One might refer, for example, to the "Bank of America tradeline on the CoreLogic report." Tradelines from creditors typically include a wealth of information about the consumer's relationship with the creditor, such as the date the account was opened, the type of account, the date

5

of the last payment, whether the consumer has paid late in the past, the original balance, the outstanding balance, the monthly amount due, the date of the most recent payment, etc.

23.     After receiving data from the Big Three, Defendant combines and summarizes that data and sells a single unified report to its customers, many of whom are mortgage lenders.

24.     CoreLogic's reports are original content based on information obtained from the Big Three. CoreLogic combines, reformats, reorganizes and deduplicates the information that it receives from the Big Three to create a report that is its own product.

25.     The Big Three provide content to Defendant in a format specified by Defendant to facilitate transfer and use of the data. Notably, Defendant uses only data from the Big Three to make its reports.

26.     Defendant chooses to purchase data from Big Three (and a license to redistribute it) for use in its reports. Defendant chooses not to seek out data from any other sources, nor does it accept same.

27.     CoreLogic's customers, in turn, use the information they obtain from CoreLogic to make decisions as to whether to extend credit to a particular consumer and for other purposes permitted under the FCRA.

28.     The processes by which the Big Three receive, sort, and store information are largely electronic.

29.     The Big Three take the credit, public record, and other information reported by furnishers and use it to create consumer credit files.

30.     The Big Three maintain credit files on more than 200 million consumers.

31.     When CoreLogic requests credit information from the Big Three for a particular consumer, the Big Three send raw credit file data to CoreLogic electronically.

32.     After receiving the raw credit file data from the Big Three for a particular consumer, CoreLogic assembles, merges, normalizes, and summarizes that data into a tri-merge credit report.

33.     CoreLogic does nothing to ensure that the credit information it receives is, in fact, accurate.

34. Despite the FCRA's clear mandate to the contrary, as far as CoreLogic is concerned, the FCRA's accuracy requirements require nothing more than that CoreLogic's tri-merge reports contain the same credit data that it received from the Big Three.

35. While CoreLogic adds information to its reports in the form of summaries, CoreLogic does nothing to ensure that the credit information it receives is, in fact, accurate.

36. CoreLogic does not take any action to determine if the information it receives from one of the Big Three is facially incompatible with information received from another of the Big Three.

37. CoreLogic does not employ reasonable procedures to assure the maximum possible accuracy of the credit information it includes in the tri-merge credit reports it sells to mortgage lenders throughout the country.

**CoreLogic's Practices Concerning the Sale of Reports on the "Deceased"**

38. CoreLogic sells thousands of tri-merge credit reports each year, and also sells credit scores.

39. CoreLogic sells tri-merge credit reports and credit scores to various markets, including but not limited to the mortgage financing and lending industry.

40. Pursuant to 15 U.S.C. § 1681e(b), CoreLogic is required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

41. CoreLogic routinely sell credit reports for *living* consumers with active credit histories, which include a notation indicating that the *living* consumer is "deceased" and therefore does not have a credit score.

42. CoreLogic does not independently verify with any source that a consumer is, in fact, deceased before placing a "deceased" notation on that consumer's tri-merge credit report.

43. CoreLogic does not employ any procedures *at all* to assure that a consumer with a "deceased" notation on their tri-merge credit report is, in fact, actually deceased before including the "deceased" notation on that consumer's report and selling that report for profit.

CLASS ACTION COMPLAINT
Case No.

44. Even in instances where other data on the face of the consumer's tri-merge report indicates that the consumer is alive, such as a current and active credit history, CoreLogic employs no procedures to assure that a consumer with a "deceased" notation on their report is, in fact, actually deceased before including the "deceased" notation in that consumer's file.

45. That is, when it receives information from one of the Big Three that a consumer is deceased, and information from another of the Big Three that is incompatible with that information—such as an active credit score (indicating the other agency does not believe the consumer is deceased), and open accounts with a very recent payment history—Defendant makes no investigation.

46. By doing so, Defendant contributes to the error and illegality of the reporting – not only reporting erroneously that an induvial is deceased, but also producing, on its own, a report that indicates that an individual is both deceased and alive.

47. Once a "deceased" notation is included in a consumer's report from one of the Big Three, CoreLogic cannot provide a credit score for that consumer based on data from whichever of the Big Three's raw data contained the deceased notation.

48. Instead, when CoreLogic sells a report with a "deceased" notation to a third party, it reports that consumer's credit score as "not available" for that member of the Big Three, while simultaneously providing scores based on the data from the other of the Big Three.

49. CoreLogic knows that third party credit issuers require a credit score from *all* of the Big Three in order to process a given credit application.

50. CoreLogic also knows that consumers without credit scores from all of the Big Three are unable to secure credit from most credit issuers.

51. CoreLogic also knows that living consumers are routinely turned down for credit specifically as a result of the deceased notation and the lack of a credit score.

52. CoreLogic has been put on notice through consumer disputes and at least two lawsuits that living, breathing consumers are turned down for credit specifically because it is reporting them as "deceased." *See, e.g., Aslani v. Corelogic Credco, LLC*, No. 1:13-CV-2635-CC-LTW, 2014 WL 12861199, at *5 (N.D. Ga. Aug. 18, 2014), *report and recommendation adopted*, No. 1:13-CV-2635-

1  CC-LTW, 2014 WL 12861361 (N.D. Ga. Sept. 8, 2014; *Perez v. Trans Union, LLC, et al.*, 526 F.
2  Supp. 2d 504, 509–10 (E.D. Pa. 2007).

3  53. Nevertheless, CoreLogic has an automated process in place that accepts all credit data
4  received from the Big Three as accurate and employs no procedures to assure that a consumer marked
5  as "deceased" by at least one of the Big Three on their tri-merge credit report is, in fact, deceased.

6  54. CoreLogic has no independent procedure to change an erroneous deceased status on
7  its own and merely parrots the credit information it receives from the Big Three.

## FACTUAL ALLEGATIONS RELATING TO PLAINTIFF

9  55. In mid-2021, Plaintiff, a widow working retail to make ends meet, sought to refinance
10  the mortgage on her home to lower her monthly mortgage payment by approximately $200.

11  56. In furtherance of that process, Plaintiff's prospective lender, LoanDepot.com,
12  purchased a tri-merge report about Plaintiff from Defendant, which Defendant delivered on or about
13  July 16, 2021.

14  57. Defendant's report included data and a credit score from Trans Union and Experian
15  regarding Plaintiff, but no data or score from Equifax; instead, Defendant's report falsely indicated
16  that Plaintiff was deceased.

17  58. Defendant included this notation on its report, taking no steps to verify it, despite
18  receiving information from Trans Union and Experian indicating that Plaintiff had active accounts
19  with recent activity and recently reported addresses (indications that Plaintiff was alive).

20  59. Defendant made no effort to determine whether Plaintiff was in fact deceased prior to
21  publishing its report. Defendant could have easily reached out to Plaintiff and allowed her to prove
22  she was alive through the submission of basic documentation. Defendant could have also reached out
23  to the Big Three to resolve the inconsistencies in the information it received.

24  60. Defendant's reporting was particularly egregious given express inconsistencies in the
25  report. It is clear that Equifax first received erroneous information that Plaintiff was deceased from
26  non-party LoanCare, LLC, a former servicer on Plaintiff's mortgage. However, Trans Union also was

reporting data from LoanCare, about the same mortgage account, without reporting that Plaintiff was deceased. Defendant made no effort to investigate this discrepancy.

61. Plaintiff's attempt to refinance her home was not successful, and Plaintiff has therefore been unable to achieve the financial savings she expected.

62. As a result of Defendant's conduct, Plaintiff has suffered concrete financial and pecuniary harm arising from monetary losses relating to credit denials, loss of use of funds, loss of credit and loan opportunities, out-of-pocket expenses, and other related costs.

63. As a result of Defendant's conduct, Plaintiff has suffered concrete harm in the form of financial and dignitary harm arising from the injury to credit rating and reputation.

## CLASS ACTION ALLEGATIONS

64. <u>The Class</u>: Plaintiff brings Count I on behalf of herself individually and on behalf of a Class, defined as follows:

> All natural persons who were the subject: (1) of a consumer report furnished by Defendant to a third party within the five years preceding the filing date of this Complaint; (2) where the consumer report contained a notation that the consumer was deceased; and (3) where one or more of Experian, Trans Union and Equifax provided information to Defendant that did not include a deceased notation.

65. Certification of the Class is appropriate under CAL. CIV. CODE § 382.

66. <u>Numerosity</u>: The Class is so numerous that joinder of the claims of all class members is impractical. Membership in the Class can be ascertained though Defendant's records.

67. <u>Existence and Predominance of Common Questions of Law and Fact</u>: Common questions of law and fact exist as to all class members. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things: (a) whether Defendant blindly includes whatever information it obtains from the Big Three into its reports without any procedure to assure the accuracy or completeness of the underlying data; (b) whether this conduct violated the FCRA; and (c) whether the violations were

willful, reckless, knowing, or intentionally committed in conscious disregard of the Plaintiff's and class members' rights.

68. <u>Typicality</u>: Plaintiff's claims are typical of the claims of each class member and all claims are based on the same facts and legal theories. Plaintiff, as every class member, alleges violations of the same FCRA provision: 15 U.S.C. § 1681e(b). The claim challenges the Defendant's consumer reporting procedures and does not depend on any individualized facts. For purposes of class certification, Plaintiff seeks only statutory and punitive damages. Such damages are appropriate in circumstances like this one where injuries are particularized and concrete, but difficult to quantify, rendering the recovery of class statutory damages ideal and appropriate.

69. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the class members' interests. Plaintiff has retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiff nor her counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of her responsibilities to the class members and has accepted such responsibilities.

70. Certification of the Class is appropriate under CAL. CIV. CODE § 382 because, *inter alia*:

a. As alleged above, the questions of law or fact common to the class members predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual issues. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct.

b. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many consumers who are unable to afford and bring such claims individually. Further, most consumers affected by Defendant's conduct are likely unaware of their rights under the law. Individual litigation of the uniform issues in this case would be a waste of judicial resources. The issues at the core of this case are class-wide and should be resolved at one time.

71. Plaintiff intends to send notice to all members of the Class to the extent required by CAL. CIV. CODE § 382. The names and addresses of the class members are available from Defendant's records.

## COUNT I

### 15 U.S.C. § 1681e(b)

### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

### (On behalf of Plaintiff, individually, and on behalf of the Class)

72. Plaintiff re-alleges and incorporates the allegations set forth above as if fully stated herein.

73. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

74. Defendant prepared patently false consumer reports concerning Plaintiff and class members, incorrectly indicating that they were deceased.

75. Defendant assembled, merged, and resold patently false consumer reports concerning Plaintiff and class members, incorrectly indicating that they were deceased.

76. Despite actual and implied knowledge that Plaintiff and the class members were not dead, Defendant readily sold such false reports to one or more third parties, thereby misrepresenting Plaintiff and class members and their creditworthiness.

77. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to ensure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff and class members.

78. Defendant violated the law not based on the information that it reported – though it was erroneous – but based upon its failure to establish and follow reasonable procedures to attain maximum possible accuracy, as required by the FCRA.

79. As a result of Defendant's conduct, Plaintiff and the Class suffered concrete harm including but not limited to financial harm, harm to credit opportunities and reputational harm.

80. Defendant's violation was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

81. Defendant's conduct was willful because it was carried out in knowing or reckless disregard for consumers' rights under the FCRA. Defendant's conduct was intentionally accomplished through its intended procedures; these procedures have continued despite the fact that other CRAs have been subject to court decisions and consumer complaints critical of similar conduct; and Defendant will continue to engage in this conduct because it believes there is greater economic value in selling over-inclusive consumer reports with facial inconsistencies than engaging in the due diligence that would result in producing accurate reports.

82. Plaintiff and class members are entitled to recover attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for relief as follows:

a) Determining that this action may proceed as a class action under CAL. CIV. CODE § 382;

b) Designating Plaintiff as the representative for the Class;

c) Designating Plaintiff's Counsel as counsel for the Class;

d) Issuing notice to the Class at Defendant's expense;

e) Declaring that Defendant committed multiple, separate violations of the FCRA;

f) Declaring that Defendant acted willfully and in deliberate or reckless disregard of the rights of Plaintiff and the Class under the FCRA;

g) Awarding statutory damages as provided by the FCRA;

h) Awarding punitive damages as provided by the FCRA;

i) Awarding reasonable attorneys' fees and costs and expenses, as provided by the FCRA; and

j) Granting further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

83. Pursuant to Section 16, Article I of the California Constitution and CAL. CODE OF CIV. PRO. § 631, Plaintiff, on behalf of herself and the Class, demands a trial by jury on all issues triable by a jury.

Date: February 24, 2022

BERGER MONTAGUE PC

Sophia Rios, SBN 305801
BERGER MONTAGUE PC
401 B Street, Suite 2000
San Diego, CA 92101
T. 619.489.0300
F. 215.875.4604
srios@bm.net

*Attorneys for Plaintiff*



# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION

CASE NUMBER: 37-2022-00007173-CU-MC-CTL       CASE TITLE: Steinberg vs CoreLogic Credco LLC [E-FILE]

**NOTICE:** All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:
    (1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),
    (2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359), *and*
    (3) the Notice of Case Assignment form (SDSC form #CIV-721).

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

### Potential Advantages and Disadvantages of ADR
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| Potential Advantages | Potential Disadvantages |
| --- | --- |
| • Saves time<br>• Saves money<br>• Gives parties more control over the dispute resolution process and outcome<br>• Preserves or improves relationships | • May take more time and money if ADR does not resolve the dispute<br>• Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |

### Most Common Types of ADR
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:** A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:** A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:** A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

**Other ADR Processes:** There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute. Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

**Local ADR Programs for Civil Cases**

**Mediation:** The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

On-line mediator search and selection: Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005). The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:** The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule 2.2.1 for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:** The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. Refer to SDSC Local Rules Division II, Chapter III and Code Civ. Proc. § 1141.10 et seq or contact the Arbitration Program Office at (619) 450-7300 for more information.

More information about court-connected ADR: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:** The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:** To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

**Legal Representation and Advice**

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at *www.courtinfo.ca.gov/selfhelp/lowcost*.

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO<br>STREET ADDRESS: 330 West Broadway<br>MAILING ADDRESS: 330 West Broadway<br>CITY, STATE, & ZIP CODE: San Diego, CA 92101-3827<br>BRANCH NAME: Central | FOR COURT USE ONLY |
|---|---|
| PLAINTIFF(S): Marlene Steinberg | |
| DEFENDANT(S): CoreLogic Credco LLC | |
| SHORT TITLE: STEINBERG VS CORELOGIC CREDCO LLC [E-FILE] | |
| **STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR)** | CASE NUMBER:<br>37-2022-00007173-CU-MC-CTL |

Judge: Carolyn Caietti                                    Department: C-70

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process. Selection of any of these options will not delay any case management timelines.

☐ Mediation (court-connected)         ☐ Non-binding private arbitration

☐ Mediation (private)                 ☐ Binding private arbitration

☐ Voluntary settlement conference (private)   ☐ Non-binding judicial arbitration (discovery until 15 days before trial)

☐ Neutral evaluation (private)        ☐ Non-binding judicial arbitration (discovery until 30 days before trial)

☐ Other (specify e.g., private mini-trial, private judge, etc.): _____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____                Date: _____

Name of Plaintiff                             Name of Defendant

Signature                                     Signature

Name of Plaintiff's Attorney                  Name of Defendant's Attorney

Signature                                     Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385. Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

**IT IS SO ORDERED.**

Dated: 02/25/2022                             _____
                                              JUDGE OF THE SUPERIOR COURT

SDSC CIV-359 (Rev 12-10)    **STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION**    Page: 1