Sophia M. Rios (SBN 305801)
BERGER MONTAGUE PC
401 B Street, Suite 2000
San Diego, CA 92101
T. (619) 489-0300; F. (215) 875-4604
srios@bm.net

E. Michelle Drake, pro hac vice
Joseph C. Hashmall, pro hac vice
BERGER MONTAGUE PC
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
T. (612) 594-5999; F. (612) 584-4470
emdrake@bm.net; jhashmall@bm.net

Kristi C. Kelly, pro hac vice
Casey Nash, pro hac vice
Andrew Guzzo, pro hac vice
KELLY GUZZO PLC
3925 Chain Bridge Rd., Suite 202
Fairfax, VA 22030
T. 703.424.7570
kkelly@kellyguzzo.com; casey@kellyguzzo.com
aguzzo@kellyguzzo.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLENE STEINBERG, <br><br> Plaintiff, <br><br> vs. <br><br> CORELOGIC CREDCO, LLC, <br><br> Defendant. | CASE NO.  3:22-cv-00498-H-SBC <br><br> **PLAINTIFF'S UNOPPOSED MOTION & MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> Date: October 2, 2023 <br> Time: 10:30 a.m. <br> Courtroom: 12A <br> Judge: Marilyn L. Huff |

1

## **<u>MOTION</u>**

2      Plaintiff Marlene Steinberg ("Plaintiff"), individually and on behalf of the

3    proposed Settlement Class, respectfully moves the Court for preliminary approval

4    of a proposed settlement with Defendant CoreLogic Credco, LLC ("Defendant").

5    Plaintiff requests the Court: (1) preliminarily approve the proposed Settlement,

6    (2) certify the Settlement Class for settlement purposes, (3) direct notice to be

7    distributed to the Settlement Class, and (4) schedule a Final Fairness Hearing.

8    Defendant does not oppose the relief sought in this Motion.

9      The Parties agree that they do not require oral argument on this Motion for

10    Preliminary Approval, and respectfully request the Motion be decided on the

11    papers.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

BACKGROUND ..................................................................................................1

I.    Procedural History ....................................................................................1

II.   The Settlement Agreement .......................................................................2

      A.    Overview of Terms .........................................................................2

      B.    Form of Notice ...............................................................................4

      C.    Opt-Outs and Objections ................................................................5

      D.    Attorneys' Fees, Costs, and Class Representative Service Award ...6

ARGUMENT .....................................................................................................6

I.    The Settlement Class Should be Certified For Settlement Purposes .........7

      A.    The Settlement Class Meets the Requirements of Rule 23 .............7

            1.    Numerosity and Ascertainability ...........................................8

            2.    Commonality .........................................................................8

            3.    Typicality .............................................................................10

            4.    Adequacy .............................................................................10

      B.    The Requirements of Fed. R. Civ. P. 23(b) Are Satisfied ............11

            1.    Predominance .......................................................................11

            2.    Superiority ...........................................................................12

II.   The Settlement is Appropriate for Preliminary Approval ........................12

      A.    The Settlement Stems From Serious, Informed, Non-Collusive Negotiations ...................................................................................13

      B.    The Settlement Has No Deficiencies .............................................14

      C.    The Settlement Does Not Grant Preferential Treatment ...............14

      D.    The Settlement Falls Well Within The Range of Approval ...........16

III.  The Proposed Notice Plan Satisfies Rule 23 ..........................................19

CONCLUSION ................................................................................................20

# TABLE OF AUTHORITIES

Cases

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ........... 7, 8, 12

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455 (2013) ......... 11

*Armstrong v. Board of Sch. Directors*, 616 F.2d 305 (7th Cir. 1980) ......... 7

*Ashby v. Farmers Ins. Co. of Oregon*, 592 F. Supp. 2d 1307 (D. Or. 2008) ....... 16

*In re BofI Holding, Inc. Sec. Litig.*, No. 3:15-CV-02324-GPC-KSC, 2022 WL 9497235 (S.D. Cal. Oct. 14, 2022) ........... 13

*Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387 (N.D. Ill. 2006) ......... 12

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ......... 16

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ......... 6

*Dalton v. Capital Associated Indus.*, 257 F.3d 409 (4th Cir. 2001) ......... 18

*Domonoske v. Bank of Am.*, 790 F. Supp. 2d 466 (W.D. Va. 2011) ......... 18

*Durham v. Continental Cent. Credit, Inc.*, 2011 WL 90253 (S.D. Cal. Jan. 10, 2011) ........... 20

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ......... 10

*In re Farmers Ins., FCRA Litig.*, 741 F. Supp. 2d 1180 (W.D. Okla. 2010) ......... 16

*Feliciano v. CoreLogic Rental Prop. Sols., LLC*, 332 F.R.D. 98 (S.D.N.Y. 2019) ........... 9

*Franks v. Kroger Co.*, 649 F.2d 1216 (6th Cir. 1981) *on reh'g*, 670 F.2d 71 (6th Cir. 1982) ........... 7

*Gen. Tel. Co. v. E.E.O.C.*, 446 U.S. 318 (1980) ......... 8

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ......... 16

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ......... 10

*Horvath v. LG Elec. Mobilecomm U.S.A., Inc.*, 2013 WL 12307877 (S.D. Cal. Nov. 5, 2013) ........... 20

*Howard v. Blue Ridge Bank*, 371 F. Supp. 2d 1139 (N.D. Cal. 2005) ......... 17

*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507 (9th Cir. 1978) ......... 10

*Loreto v. Gen. Dynamics Info. Tech., Inc.*, No.19-cv-1366-GPC, 2021 WL 3141208 (S.D. Cal. July 26, 2021) ........................................................................................... 13

*Mazza v. Am. Honda Motor Co.,* 666 F.3d 581 (9th Cir. 2012) ........................... 11

*In re Mex. Money Transfer Litig.*, 267 F.3d 743 (7th Cir. 2001) ......................... 12

*Moorer v. StemGenex Med. Grp., Inc.*, 2021 WL 4993054 (S.D. Cal. Oct. 26, 2021) ....................................................................................................................... 14

*National Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................................................................... 13

*Patel v. Trans Union, LLC*, 308 F.R.D. 292 (N.D. Cal. 2015) ............................. 9

*Patel v. Trans Union, LLC*, 2018 WL 1258194 (N.D. Cal. March 11, 2018) ...... 18

*Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483 (D.C. Cir. 1992) ............. 19

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) ................................. 7

*Ramirez v. Trans Union, LLC*, 301 F.R.D. 408 (N.D. Cal. 2014) ........................ 9

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ............................. 15

*Romero v. Securus Tech., Inc.*, No.16-cv-1283-JM, 2020 WL 3250599 (S.D. Cal. June 16, 2020) .......................................................................................................... 14

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) ............................................ 18

*San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021 (N.D. Cal. 1999) ...................................................................................................... 6

*Soutter v. Equifax Info. Servcs., LLC*, 307 F.R.D. 183 (E.D. Va. 2015) ............. 9

*Stanton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ......................................... 15

*Thompson v. Costco Wholesale Corp.*, No. 14-2778, 2017 WL 1957552 (S.D. Cal. May 11, 2017) .......................................................................................................... 13

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) ................................ 11

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ........................................ 9

*Whiteway v. FedEx Kinko's Off. And PrintServs., Inc*., 2006 WL 2642528 (N.D. Cal. Sept. 14, 2006) ................................................................................................ 10

*In re WorldCom, Inc. Sec. Litig*., No. 02-3288, 2004 WL 2591402 (S.D.N.Y. Nov.

12, 2004) ............................................................................................................. 15

*Zepeda v. PayPal, Inc.*, No. 10-1668, 2014 WL 718509 (N.D. Cal. Feb. 24, 2014)

............................................................................................................................. 13

Rules & Statutes

15 U.S.C. § 1681 ........................................................................................ *passim*

Fed. R. Civ. P. 23 ...................................................................................... *passim*

1

**MEMORANDUM**

Plaintiff, individually and on behalf of those similarly situated, and Defendant (together, the "Parties") have reached a class action settlement to resolve Plaintiff's claims alleging that Defendant violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681e(b), by failing to maintain reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports it resold on the Settlement Class Members.

The proposed Settlement provides for the establishment of a $5.695 million common fund for the Settlement Class, as well as important injunctive relief directly related to the claims at issue. This represents an excellent result for the Settlement Class. In exchange for the relief provided, the Settlement Class Members will release only claims that are the subject of this action.

The Settlement was reached only after the exchange and review of extensive discovery and mediation with the assistance of a professional mediator over a period of months. The Settlement is a fair and reasonable resolution of the claims and should be approved. For the reasons outlined below, Plaintiff respectfully requests the Court preliminarily approve the Settlement, direct notice to the Settlement Class, and schedule a Final Fairness Hearing.

**BACKGROUND**

**I.    Procedural History**

On February 24, 2022, Plaintiff filed her initial class action complaint in San Diego County Superior Court against Defendant, alleging that Defendant had negligently and willfully violated the FCRA, 15 U.S.C. § 1681e(b). (ECF No. 1-2.) Specifically, Plaintiff alleged that Defendant resold inaccurate information from one or more of the nationwide consumer reporting agencies (Equifax, Experian, or TransUnion) where the consumer report contained a notation that the consumer was deceased and where either one or two of the nationwide consumer reporting

agencies also provided information to Defendant that did not include a deceased notation. (*Id.*)

On April 12, 2022, Defendant removed to this Court (ECF No. 1) and answered the complaint on May 23, 2022 (ECF No. 8).

The Parties participated in an Early Neutral Evaluation with Judge Schopler on August 25, 2022 (ECF No. 24). While the case did not settle at that time, it prompted ongoing discussions between the Parties regarding settlement potential, as well as conversations about additional discovery that would be required to fully inform the Parties' positions. The Parties continued discovery efforts over the coming months, exchanging written requests and responses and productions of documents. The Parties also conducted multiple meet and confers, both telephonically and through written correspondence.

In January 2023, the Parties attended a full day mediation with third party neutral Rodney Max, exchanging detailed mediation statements beforehand. While a settlement was not reached in full at the mediation, the Parties made significant progress and continued to engage in arms' length negotiations through counsel during February and March 2023, ending with a draft terms sheet. The Parties worked to formalize the resolution in a formal Settlement Agreement. Defendant also worked diligently to compile supplemental data identifying class members and categorizing them in the way required by the Settlement Agreement.

The Parties now bring their Agreement before the Court for preliminary approval.[1]

## II.     The Settlement Agreement

### A.     Overview of Terms

The Settlement Class is defined as:

---

[1] The Settlement Agreement with Exhibits is attached to the Declaration of E. Michelle Drake ("Drake Decl.") as Exhibit 1.

all persons residing in the United States of America (including its territories and Puerto Rico) who were the subject: (1) of a consumer report resold by Defendant to a third party within the time period of January 1, 2021 and continuing through May 2, 2023, (2) where the consumer report contained a notation that the consumer was deceased, and (3) either one or two of the nationwide consumer reporting agencies (Experian, Trans Union and Equifax) provided information to Defendant that did not include a deceased notation.

(Settlement Agreement ("SA") ¶ 2.22.)  The Parties estimate that the Settlement Class consists of 27,014 individuals.  (*Id.* ¶ 4.1)

Defendant will pay $5,695,000 as a common fund for the Settlement Class. (*Id.* ¶ 4.3.1.)  Settlement Class Members will each receive *pro rata* payments from the fund.  (*Id.* ¶ 4.3.1.1.)  Approximately 4,622 Settlement Class Members will receive payments automatically, without being required to file a claim form.  (*Id.* ¶ 4.3.1.2.)  Those Settlement Class Members meet the following conditions: (1) the Settlement Class Member was the subject of a consumer report resold by Defendant to a third-party during the Settlement Class Period that included information from at least one nationwide consumer reporting agency (but not all of the reporting nationwide consumer reporting agencies) where the score segment of the report indicated that the consumer was deceased; and (2) that nationwide consumer reporting agency's report does not contain a deceased notation within a tradeline.

The remaining Settlement Class Members, all of whom have at least one report with a tradeline stating they are deceased, but who also have reports from at least one other bureau that contains no such tradelines, will be required to submit a simple Claim Form attesting that they are alive (*id.* ¶ 4.3.1.3). Class Members who are entitled to an automatic payment and Class Members who make claims will all receive equal payments from the fund. (*Id.* ¶ 5.3.1.)

Plaintiff will request $7,500 from the common fund as a Class Representative Award.  (*Id.* ¶ 5.3.)  Class Counsel will also request that the Court approve for distribution from the common fund 25% of the fund as attorneys' fees, as well as

reimbursement for documented out-of-pocket expenses.  (*Id.* ¶ 5.3.)

Defendant has also agreed to injunctive relief in the Settlement directed at the claims alleged by Plaintiff.  Specifically, Defendant has agreed to improve its reporting practices to more clearly state that the data it is reporting is precisely the data it received from the nationwide consumer reporting agencies and that Credco cannot evaluate its content, as well as to further identify to recipients of the information how to contact Corelogic Credco if they believe the information being resold by Credco is inaccurate or incomplete.

In exchange for the Settlement's benefits, Settlement Class Members will release claims that they have under the FCRA, and state statutory or common law analogs, for damages relating to the inclusion of any notations or indicators that the consumer was deceased in reports published by Defendant.  (*Id.* ¶ 4.4.1.)

### B.    Form of Notice

The Parties have agreed to request that JND Legal Administration be appointed as the Settlement Administrator.  The Settlement Administrator will be responsible for implementing the Notice Plan as outlined in the Settlement Agreement.  (SA ¶ 4.2.1.)

All Settlement Class Members will be sent the Notice in substantially the same form as attached to the Agreement as Exhibits B and C, via U.S. Mail to the last known address, as updated by appropriate public records.  (SA ¶ 4.2.3.) Settlement Class Members will also be sent notice by email, if available.  The Notice contains detailed information about the Settlement, including the information required by Fed. R. Civ. P. 23(c)(2)(B).  (*Id.* at Exs. B and C.)  The Notice will also inform Settlement Class Members how to obtain more information about the Settlement, including the URL for the Settlement Website and deadlines by which to take action, like filing claims or opting-out, should they so choose. (*Id.*)

1    For those Settlement Class Members required to return a Claim Form to

2    receive their payment, the Notice will enclose a Claim Form and specify on the

3    Notice that the Class Member must return the Form by the Claims Deadline to

4    receive monetary relief.  The Claim Form requires a simple attestation that the Class

5    Member was in fact alive at the time of the report furnished by Defendant and is

6    meant to ensure that for the Class Members where Defendant's records are unclear

7    on the matter, are appropriately receiving benefits under the Settlement.  Claims

8    may also be submitted online, through the Settlement Website.

9    The Settlement Administrator will establish and administer the Settlement

10    Website referenced in the Notice, which will contain copies of relevant pleadings

11    (*e.g.*, the Complaint, Answer, the Settlement Agreement, the briefing for settlement

12    approval and copies of any orders issued by the Court in connection with same).

13    (*Id.* ¶ 4.2.4.)  The Settlement Website will also post the Long Form Notice (Exhibit

14    F) which also elaborates on the Settlement.  Class Counsel will provide a toll-free

15    telephone line and email address for inclusion on the Notice for Settlement Class

16    Members to use to send inquiries to Class Counsel regarding the Settlement.  (*Id.*

17    ¶ 4.2.5.)

18    **C.    Opt-Outs and Objections**

19    The Notice will inform all Settlement Class Members of their right to opt out

20    of or object to the Settlement and of the associated deadlines.  (*Id.* at Exs. B and C.)

21    Settlement Class Members who choose to opt out must send, by the Opt Out &

22    Objection Deadline, a written statement to the Settlement Administrator indicating

23    their desire to be excluded from the Settlement Class in this action, and be signed

24    by the Settlement Class Member, and include their name, address, and phone

25    number.  (*Id.* ¶ 4.4.5.1.)  To properly object, a Settlement Class Member must file

26    their objection with the Court and serve a copy on the Settlement Administrator, by

27    the Opt Out & Objection Deadline.  The objection must include the Class Member's

28    name, address, phone number, be signed by the Class Member and include a

1   notation that it is for the above-captioned matter.  Additionally, the objection must

2   contain the basis for any objections with specificity including documentation, and

3   if the objector is represented by counsel, it must state that counsel's contact

4   information and whether they intend to appear at the Final Fairness Hearing.  (*Id.*

5   ¶ 4.4.7.)

6        Fourteen days before the Final Fairness Hearing, the Settlement

7   Administrator will provide a declaration for filing with the Court, attesting to the

8   distribution of Notice, as well as identifying any opt outs received.  (*Id.* ¶ 4.4.5.2.)

9        **D.    Attorneys' Fees, Costs, and Class Representative Service Award**

10       As noted above, the Settlement contemplates Class Counsel petitioning the

11  Court for attorneys' fees in the amount of 25% of the common fund, and

12  reimbursement of documented out-of-pocket expenses.  (SA ¶ 5.3.)  It also

13  contemplates Plaintiff requesting a Class Representative Award of $7,500, to be

14  paid from the fund.  (*Id.* ¶ 5.3.)  These requests will be made through written motion

15  to the Court, to be filed 14 days before the Opt Out and Objection Deadline, and

16  the papers will be posted to the Settlement Website within 24 hours of filing, for

17  Class Members to review.  (*Id.* ¶ 5.3.) Approval of the Settlement Agreement does

18  not depend on the full amount of any requested fees, costs, or service award being

19  approved.  (*Id.* ¶ 5.3.) Nor did the Parties negotiate these amounts until after the

20  classwide relief had been agreed upon.  (*Id.*)

21       The Parties will also request the expenses of the Settlement Administrator be

22  reimbursed from the common fund.  Currently the expenses are estimated to not

23  exceed $97,005.

24                          **<u>ARGUMENT</u>**

25       Federal courts favor the voluntary resolution of litigation through settlement,

26  particularly in the class action context.  *San Francisco NAACP v. San Francisco

27  Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1029 (N.D. Cal. 1999) ("There is a strong

28  judicial policy in favor of settlements in complex class actions"); *Class Plaintiffs v.*

*City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *Armstrong v. Board of Sch. Directors*, 616 F.2d 305, 312-13 (7th Cir. 1980); *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981) *on reh'g*, 670 F.2d 71 (6th Cir. 1982); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999).

Approval of a Rule 23 class action settlement is a two-step process. At the first stage, the court determines whether the settlement is within the range of possible approval. The court also conducts a preliminary determination that the proposed settlement class satisfies the prerequisites set forth in Federal Rule of Civil Procedure 23(a) and at least one of the subsections of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). If the settlement is preliminarily approved, a final approval hearing will be scheduled, and notice will be sent to the proposed settlement class regarding the settlement. At the second stage, following the final fairness hearing, final approval will be granted if the parties establish that a settlement is fair and adequate.

For the reasons below, the Court should: (1) preliminarily approve the Parties' proposed Settlement, (2) certify the Settlement Class for settlement purposes only, (3) approve the notice plan for distribution, (4) appoint Plaintiff as Class Representative, and Plaintiff's Counsel as Class Counsel, and appoint JND Legal Administration as the Settlement Administrator, and (5) set a date for the Final Fairness Hearing.

## I.    The Settlement Class Should be Certified For Settlement Purposes

### A.    The Settlement Class Meets the Requirements of Rule 23

To certify a class, the Court must find that the prerequisites of Rule 23(a) are met, and that the case falls within at least one of the categories listed in Rule 23(b). The same standards generally apply when certification is sought for settlement

purposes only, although issues of manageability at trial are not relevant.  *Amchem Prods., Inc.* 521 U.S. at 620.

Defendant contends that a contested class could not be certified. Nonetheless, for purposes of preliminary approval, the Settlement Class here is certifiable under these standards.  Rule 23(a) provides that a case is appropriate for certification as a class action if: "the class is so numerous that joinder of all members is impracticable; there are questions of law or fact common to the class; the claims or defenses of the representative parties are typical of the claims or defenses of the class; and the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a) (numbering omitted).  Rule 23(b)(3) provides that a case may be certified as a class action if: "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b).

### 1.  Numerosity and Ascertainability

Members of a certifiable class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  No specific numerical threshold is required; instead, the law "requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. v. E.E.O.C.*, 446 U.S. 318, 330 (1980).

The Settlement Class here is plainly numerous and ascertainable.  As noted above, the Parties agree that the Settlement Class has approximately 27,014 members, and Defendant's records have identified consumers that meet the proposed Settlement Class definition.  (SA ¶ 4.1).

### 2.  Commonality

To satisfy Rule 23(a)(2), there must be "questions of law or fact common to the class."  Satisfaction of the commonality requirement requires that plaintiffs

8

establish that their claims "depend upon a common contention," the resolution of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also id.* at 359 ("We quite agree that for purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do[.]") (citation omitted).

Here, the Settlement Class raises common factual questions because each member is defined with reference to Defendant's standard policies and practices: Defendant's uniform decision to report all class members as deceased, even when it had substantial contrary information in its possession. For all class members, Defendant knew that an application for credit was being submitted on the class member's behalf. Defendant's records reflect that of the three credit bureaus, at least one bureau reporting included a credit score, signifying the bureau believed the consumer was alive. Defendant had a uniform policy of doing nothing to resolve these contradictions. Thus, the Settlement Class raises common legal issues of FCRA liability and willfulness, mirroring FCRA cases in which courts have found commonality satisfied where a consumer reporting agency reported inaccurate information pursuant to a uniform policy or procedure. *See*, *e.g.*, *Feliciano v. CoreLogic Rental Prop. Sols., LLC*, 332 F.R.D. 98, 106 (S.D.N.Y. 2019); *Patel v. Trans Union, LLC*, 308 F.R.D. 292, 304 (N.D. Cal. 2015) (finding common question of whether "there [were] reasonable procedures in place (here, the name-only logic) to ensure the maximum possible accuracy of the information"); *Ramirez v. Trans Union, LLC*, 301 F.R.D. 408, 418 (N.D. Cal. 2014) ("question of whether using the name-only matching logic assures maximum accuracy"); *Souter v. Equifax Info. Servcs., LLC*, 307 F.R.D. 183, 205 (E.D. Va. 2015) (finding consumer reporting agencies' procedures to "raise a common contention of reasonableness that can be resolved with common answers on a classwide basis").

1    3.  <u>Typicality</u>

2    Rule 23(a)(3) requires that the claims of the named plaintiff be "typical of

3    the claims . . . of the class."  Fed. R. Civ. P. 23(a)(3).  The typicality test is "whether

4    other members have the same or similar injury, whether the action is based on

5    conduct which is not unique to the named plaintiffs, and whether other class

6    members have been injured by the same course of conduct."  *Hanon v.*

7    *Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted).  It

8    focuses on "the nature of the claim . . . of the class representative, and not . . . the

9    specific facts from which it arose."  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970,

10   984 (9th Cir. 2011) (quoting *Hanon*, 976 F.2d at 508).

11   Here, Plaintiff's claims are typical of those of the Settlement Class.  Like

12   every member of the Settlement Class, she was the subject of a consumer report

13   resold by Credco that contained an inaccurate deceased indicator from one of the

14   nationwide consumer reporting agencies where at least one other nationwide

15   consumer reporting agency did not also report a deceased indicator.  Plaintiff's

16   proof relating to the reasonableness of Defendant's procedures, whether Defendant

17   acted willfully, and the proper amount of statutory and punitive damages would

18   advance not only Plaintiff's claims but the claims of all Settlement Class Members.

19   Typicality is satisfied.

20   4.  <u>Adequacy</u>

21   Rule 23(a)(4) requires plaintiffs to show that "the representative parties will

22   fairly and adequately protect the interests of the class."  Legal adequacy turns on

23   two questions: (1) whether the class representative's interests are common with,

24   and not antagonistic to, the class's interests; and (2) whether the class representative

25   is "able to prosecute the action vigorously through qualified counsel."  *Whiteway*

26   *v. FedEx Kinko's Off. And PrintServs., Inc*., 2006 WL 2642528, at *7 (N.D. Cal.

27   Sept. 14, 2006) (citing *Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512

28   (9th Cir. 1978)).  Both are satisfied here.

First, Plaintiff has no conflict with the Settlement Class, as each has the same interest in receiving relief.  Plaintiff has been involved, staying in communication with Counsel throughout investigation, litigation, and settlement negotiations, reviewing and approving the complaint and the Settlement Agreement, and putting the best interests of the Settlement Class Members first.  Second, Plaintiff has secured counsel that has been appointed as lead counsel in dozens of FCRA class actions. (Drake Decl. ¶¶ 4-12; Declaration of Kristi C. Kelly ("Kelly Decl.") ¶¶ 8-10.)  Accordingly, Plaintiff and her Counsel are adequate.

## B.    The Requirements of Fed. R. Civ. P. 23(b) Are Satisfied

Rule 23(b)(3) provides that "[a]n action may be maintained as a class action if the prerequisites of [Rule 23(a)] are satisfied, and in addition[,] the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members[.]"  Fed. R. Civ. P. 23(b)(3). "[T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'"  *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013) (citing Fed. R. Civ. P. 23(b)(3)) (modification in original).

### 1.  Predominance

A plaintiff must demonstrate the superiority of maintaining a class action and show "'that the questions of law or fact common to class members predominate over any questions affecting only individual members.'"  *Mazza v. Am. Honda Motor Co.,* 666 F.3d 581, 596 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(b)(3)). "[T]he focus of the predominance inquiry" is whether "a proposed class is 'sufficiently cohesive to warrant adjudication by representation.'"  *Amgen*, 568 U.S. at 469 (citation omitted).  It "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the noncommon, aggregation-defeating, individual issues."  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted).

1    Here, common questions predominate: (1) whether Defendant's reporting was

2    compliant with the FCRA; (2) whether Defendant's conduct was willful; and (3)

3    the proper measure of statutory and punitive damages.  As discussed above, these

4    issues dominate this litigation, and do not require individualized inquiry.

5        2.  Superiority

6        Federal courts have long regarded "consumer claims" like those presented

7    here as "particularly appropriate for class resolution."  *Amchem*, 521 U.S. at 625;

8    *In re Mex. Money Transfer Litig.*, 267 F.3d 743, 747 (7th Cir. 2001) ("Many

9    opinions … give consumer fraud as an example of a claim for which class treatment

10   is appropriate."); *see also Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 395 (N.D.

11   Ill. 2006) ("Consumer claims are among the most commonly certified for class

12   treatment[.]").

13       Class Counsel are unaware of any suits brought on an individual basis against

14   Defendant related to its deceased reporting, and thus it is doubtful that any

15   Settlement Class Members would prefer separate actions, and if they do, they may

16   opt out of the Settlement to do so.  Class litigation is not only the most efficient

17   means of adjudicating these disputes; it is the only means.  Lastly, there are no

18   foreseeable case management issues that should preclude class certification.

19   Superiority is therefore met.

20   **II.   The Settlement is Appropriate for Preliminary Approval**

21       At the preliminary approval stage, the Court must determine the fairness,

22   reasonableness, and adequacy of the settlement terms.  *See* Fed. R. Civ. P. 23(e)(2).

23   The Court must make an initial determination of whether the settlement:

24       Rule 23(e)(2)(C) requires that the Court consider whether "the relief
         provided for the class is adequate, taking into account: (i) the costs,
25       risks, and delay of trial and appeal; (ii) the effectiveness of any
         proposed method of distributing relief to the class, including the
26       method of processing class-member claims; (iii) the terms of any
         proposed award of attorney's fees, including timing of payment; and
27       (iv) any agreement required to be identified under Rule 23(e)(3)."

28

*In re BofI Holding, Inc. Sec. Litig.*, No. 3:15-CV-02324-GPC-KSC, 2022 WL 9497235, at *5 (S.D. Cal. Oct. 14, 2022). "At the preliminary approval stage, a full fairness analysis is unnecessary." *Zepeda v. PayPal, Inc.*, No. 10-1668, 2014 WL 718509, *4 (N.D. Cal. Feb. 24, 2014); *see also Thompson v. Costco Wholesale Corp.*, No. 14-2778, 2017 WL 1957552, *6 (S.D. Cal. May 11, 2017). The proposed Settlement more than passes the preliminary standard.

### A.    The Settlement Stems From Serious, Informed, Non-Collusive Negotiations

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *National Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). The Settlement here was reached after informal and formal discovery, mediation with a third-party neutral, and subsequent arms-length settlement discussions between the Parties' experienced counsel. Plaintiff and Defendant were able to fully assess the strength of their claims and defenses before settlement. Defendant produced and Plaintiff reviewed nearly 6,000 pages of documents, so that Counsel could be sure they fully understood the policies and practices at issue. In addition, Defendant produced, and Plaintiff reviewed, voluminous data regarding the credit reports at issue in the case, including exemplar report data, so that the Parties could be on the same page regarding who was in the Class, and the proper methodology to identify them.

Thus, the circumstances of the Parties' settlement negotiations support a finding that the Settlement is fair. *See*, *e.g.*, *Loreto v. Gen. Dynamics Info. Tech., Inc.*, No.19-cv-1366-GPC, 2021 WL 3141208, *4 (S.D. Cal. July 26, 2021) (finding settlement to stem from arm's-length negotiations "facilitated by an experienced mediator after the exchange of sufficient discovery to allow the parties to ascertain Defendant's potential exposure," which supported preliminary approval).

Additionally, Plaintiff's Counsel are highly experienced in consumer class action litigation and FCRA litigation. (*See generally* Drake Decl.; Kelly Decl.)

Plaintiff's Counsel endorse the Settlement as fair and adequate under the circumstances. Courts recognize that the opinion of experienced and informed counsel in favor of settlement should be afforded substantial consideration in determining whether a class settlement is fair and adequate. *See*, *e.g.*, *Romero v. Securus Tech., Inc.*, No.16-cv-1283-JM, 2020 WL 3250599, *6 (S.D. Cal. June 16, 2020) (finding class counsel's "extensive experience in complex litigation and class actions" to support preliminary approval). Indeed, the settlement amount is in line with, and for some cases greater than, recoveries in other settlements for similar claims, as discussed below.

**B.    The Settlement Has No Deficiencies**

This Settlement achieves a remarkable recovery for the Settlement Class and contains none of the deficiencies which can prevent judicial approval. The only contemplated deductions from the settlement fund are the Named Plaintiff Service Award, 25% of the fund as attorneys' fees, and reimbursement of documented out-of-pocket expenses of Class Counsel and the Settlement Administrator. All these contemplated requests will require judicial approval and the Settlement does not depend on approval of the requested amounts. The totality of the settlement fund will then be paid out to eligible Settlement Class Members in equal shares, and there is no reversion of any funds to the Defendant. These circumstances support approval here. *Moorer v. StemGenex Med. Grp., Inc.*, 2021 WL 4993054, *5 (S.D. Cal. Oct. 26, 2021) (finding no deficiencies in settlement where common fund would be used to pay the administrator, service awards, class counsel's fees and costs, and then equal shares to class members).

**C.    The Settlement Does Not Grant Preferential Treatment**

Preferential treatment is not a concern here. The Settlement calls for the certification of a single class. Every participating Settlement Class Member will be treated equally and have an equal opportunity to share in the settlement fund. While many of the Settlement Class Members are entitled to automatic payments and

1  others will need to submit a simple Claim Form, this is not preferential treatment—

2  instead it is the most rational way to fairly administer the settlement fund, as some

3  Class Members' entitlement to relief is apparent from Defendant's records and

4  others require minimal additional substantiation of their eligibility. This

5  substantiation is necessary because, unlike the automatic payment Class Members,

6  the remaining Class Members have some notations in their credit file suggesting

7  that they may have passed away. For those Class Members, requiring a Claim Form

8  to state they are not deceased is reasonable and appropriate.

9      The Claim Form is straightforward, requesting only the necessary

10  information. Similar forms have been approved in other settlements, including

11  FCRA settlements. *See, e.g.*, *In re WorldCom, Inc. Sec. Litig.*, No. 02-3288, 2004

12  WL 2591402, *12 (S.D.N.Y. Nov. 12, 2004) (requiring claim form was "important

13  in helping to insure that the settlement fund is distributed to class members who

14  deserve to recover from the fund"); *Thomas v. Backgroundchecks.com*, No. 13-29,

15  ECF No. 115 (E.D. Va. Aug. 11, 2015) (final approval of FCRA settlement with

16  some class members eligible to receive additional payments by asserting certain

17  harm); *Ridenour v. Multi-Color Corp., Sterling Infosystems, Inc.*, No. 15-41, ECF

18  No. 204 (E.D. Va. July 26, 2017) (approving FCRA settlement where class

19  members who disputed received automatic payments, while others had to submit

20  claim form). Moreover, when the fund is paid out, all eligible Settlement Class

21  Members will receive checks for the same amount.

22      The Settlement also calls for a modest, $7,500 service award for the Named

23  Plaintiff, but that requested award is subject to the Court's review and approval and

24  is supported by her involvement and dedication here. Furthermore, the Ninth

25  Circuit has recognized that service awards to named plaintiffs in a class action are

26  permissible and do not render a settlement unfair or unreasonable. *See Stanton v.*

27  *Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003); *Rodriguez v. W. Publ'g Corp.*, 563

28  F.3d 948, 958–69 (9th Cir. 2009).

**D.     The Settlement Falls Well Within The Range of Approval**

The Settlement is impressive when considering the range of possible recoveries for the Settlement Class, the number of procedural and merits-based hurdles between Plaintiff and a final judgment, the significant uncertainties of a final judgment for Plaintiff, and Defendant's intent to vigorously oppose class certification if the case were to proceed.

Considering these factors, the proposed settlement amount is substantial. Plaintiff filed this case seeking statutory damages under the FCRA, which provides for between $100 and $1,000 for each willful violation.  15 U.S.C. § 1681n(a)(1). The FCRA itself does not provide any guidance to courts in choosing the appropriate recovery for a statutory violation, *see* 15 U.S.C. § 1681n(a)(1), but in determining the amount of statutory damages to impose under the FCRA, courts have looked to "the importance, and hence the value, of the rights and protections" at issue in the case.  *Ashby v. Farmers Ins. Co. of Oregon*, 592 F. Supp. 2d 1307, 1318 (D. Or. 2008); *In re Farmers Ins., FCRA Litig.*, 741 F. Supp. 2d 1180, 1211 (W.D. Okla. 2010).  The expected monetary recovery of $607[2] net per class member is 60.7% of the likely award if this case had proceeded all the way through a final judgment in Plaintiff's favor, and is an excellent recovery for the Settlement Class. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n. 2 (2d Cir. 1974) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery") *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

The recovery that each Settlement Class Member is estimated to receive is line with, or higher, than other approved settlements challenging alleged inaccurate reporting under the FCRA.  *See*, *e.g.*, *Pang v. Credit Plus*, No. 1:21-cv-00122, ECF

---

[2] Assuming a claims rate of ten percent.

No. 61 (D. Md. 2021) (final approval of settlement regarding deceased reporting where class members needed to file claim to recover; recovering class members received roughly $430); *Roe v. IntelliCorp Records, Inc.*, No. 12-2288, ECF No. 139 (N.D. Ohio June 5, 2014) (final approval of settlement of alleged inaccurate reporting, and other FCRA claims, providing for $50-$270 net per class member); *Ryals v. HireRight Sols. Inc.*, No. 09-625, ECF No. 127 (E.D. Va. Dec. 22, 2011) (final approval of settlement involving §1681e(b) claims, providing $15-$200 *gross* per class member recovery); *Ori v. Fifth Third Bank, Fiserv, Inc.*, No. 08-432, ECF No. 217 (E.D. Wis. Jan. 10, 2012) (final approval of settlement of alleged inaccurate mortgage loan reporting, claims-made, each claimant receiving approximately $55); *Speers v. Pre-Employ.com, Inc.*, No. 13-1849, ECF No. 83 (D. Or. Feb. 10, 2016) (final approval of settlement of failure to maintain strict procedures when reporting adverse public record information, resulting in approximately $153 net per class member); *Villaflor v. Equifax Info. Servc. LLC*, No. 09-329, ECF No. 177 (N.D. Cal. May 3, 2011) (final approval of settlement of §1681e(b) claims, providing credit monitoring for class members with a retail value of $155).

The Settlement also includes important injunctive relief—practice changes by Defendant to directly address Plaintiff's claims about deceased indicator reporting.  This relief is noteworthy, as Defendant is "the nation's number one provider of merged and specialized credit reports" (www.credcoservices.com) and thus it is likely Settlement Class Members will have their credit reports furnished by Defendant again, and the practice changes will help to ensure accurate reporting. This non-monetary benefit is even more significant given that it is not settled law that the FCRA provides a private right to injunctive relief.  *See*, *e.g.*, *Howard v. Blue Ridge Bank*, 371 F. Supp. 2d 1139, 1145 (N.D. Cal. 2005) (discussing split in federal courts and ultimately striking request for injunctive relief in FCRA case). The importance of the injunctive relief should be considered as part of the value of the Settlement.  *Patel v. Trans Union, LLC*, 2018 WL 1258194, *6 (N.D. Cal.

17

March 11, 2018) ("[w]hen determining the value of a settlement, courts consider the monetary and non-monetary benefits that the settlement confers.") (gathering cases in support).

The recovery provided for in the Settlement is thus in line or exceeds what Plaintiff may have received had she prevailed at trial. Establishing liability here, though, was far from certain. The FCRA is not a strict liability statute. *Dalton v. Capital Associated Indus.*, 257 F.3d 409, 417 (4th Cir. 2001). Additionally, a FCRA plaintiff can recover statutory damages only where the defendant has acted willfully. 15 U.S.C. §§ 1681n(a)(1). If the matter were litigated, along with its other merits and standing arguments, Defendant would have vigorously contested whether the class could have been certified over its objections; the question of whether its reporting was reasonable and compliant with the FCRA; entitlement to damages; and the question of willfulness, including the argument that Defendant's interpretation of its statutory obligations was objectively reasonable, and thus that any violation necessarily was not willful under the FCRA. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007) ("a company subject to FCRA does not act in reckless disregard . . . unless the [challenged] action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."). The outcome of Plaintiff's claims, therefore, cannot be certain. *See Domonoske v. Bank of Am.*, 790 F. Supp. 2d 466, 474 (W.D. Va. 2011) (approving final settlement in the FCRA context and observing that "proof of willfulness seems an onerous task with a highly uncertain outcome").

Viewed in the context of the significant litigation risks faced, Defendant's defenses and anticipated motion practice, as well as the substantial delay and costs that Settlement Class Members would have experienced in order to try and receive proceeds from an adversarially-obtained judgment, not to mention the judicial

1    resources required, this Settlement is in the best interests of the Named Plaintiff and

2    the Settlement Class Members and should be approved.

3    **III.    The Proposed Notice Plan Satisfies Rule 23**

4          Following preliminary approval, the Settlement Class Members must be given

5    notice concerning the nature of the Settlement and of their rights.  Rule 23(e)(1)

6    requires that: "The court must direct notice in a reasonable manner to all class

7    members who would be bound by the proposal."  Rule 23(c)(2)(B) sets forth the

8    contents of a notice to be sent to members of a Rule 23(b)(3) class: for any class

9    certified under Rule 23(b)(3), the court must direct to class members the best notice

10   that is practicable under the circumstances, including individual notice to all

11   members who can be identified through reasonable effort. The notice must clearly

12   and concisely state in plain, easily understood language: the nature of the action;

13   the definition of the class certified; the class claims, issues, or defenses; that a class

14   member may enter an appearance through an attorney if the member so desires; that

15   the court will exclude from the class any member who requests exclusion; the time

16   and manner for requesting exclusion; and the binding effect of a class judgment on

17   members.

18         The Parties' proposed Notice Plan satisfies all these requirements.  The Class

19   Notice will be sent via U.S. mail to each of the Settlement Class Members, and

20   email where available.  Moreover, the Administrator will implement and maintain

21   a Settlement Website on which information about the Settlement, the Long Form

22   Notice, and important litigation documents will be posted.  The mail and Long Form

23   Notices provide information about the settlement terms, Settlement Class

24   Members' rights and the deadlines by which to exercise them.  Additionally, Class

25   Counsel will establish a toll-free telephone line for class member inquiries related

26   to the Settlement.

27         This notice program meets the requirements of Fed. R. Civ. P. 23 and should

28   be approved.  *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir.

1992) ("It is beyond dispute that notice by first class mail ordinarily satisfies rule 23(c)(2)'s requirement that class members receive 'the best notice practicable under the circumstances.'"); *see also Horvath v. LG Elec. Mobilecomm U.S.A., Inc.*, 2013 WL 12307877, *4 (S.D. Cal. Nov. 5, 2013) (finding notice plan consisting of settlement website with long form notice and settlement documents, telephone line, and mailed short form notice to be "reasonably calculated to appropriately apprise [class members] of their rights."); *Durham v. Continental Cent. Credit, Inc.*, 2011 WL 90253, *4 (S.D. Cal. Jan. 10, 2011) (approving mailed class notice).

## **CONCLUSION**

For these reasons, the Court should grant Plaintiff's Motion and enter the Preliminary Approval Order.

Respectfully submitted,

Dated: August 25, 2023

BERGER MONTAGUE PC

By: /s/E. Michelle Drake
        E. Michelle Drake, *pro hac vice*
        Joseph C. Hashmall, *pro hac vice*
        *Attorneys for Plaintiff*