# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

MARLENE STEINBERG,

Plaintiff,

v.

CORELOGIC CREDCO, LLC,

Defendant.

Case No.: 3:22-cv-00498-H-SBC

**ORDER:**

**(1) CERTIFYING CLASS FOR SETTLEMENT PURPOSES;**

**(2) PRELIMINARILY APPROVING CLASS SETTLEMENT;**

**(3) APPOINTING CLASS REPRESENTATIVE AND CLASS COUNSEL;**

**(4) APPROVING CLASS NOTICE; AND**

**(5) SCHEDULING FINAL APPROVAL HEARING**

[Doc. No. 46.]

On August 25, 2023, Plaintiff Marlene Steinberg ("Plaintiff") filed an unopposed motion for preliminary approval of class action settlement and directing dissemination of notice to the class. (Doc. No. 46.) On October 2, 2023, the Court held a hearing on the

matter.  Eleanor Michelle Drake appeared on behalf of Plaintiff.  Timothy James St. George appeared on behalf of Defendant CoreLogic Credco, LLC ("Defendant").  For the following reasons, the Court grants Plaintiff's motion and sets a schedule for further proceedings.

## I.    BACKGROUND

### A.    Factual and Procedural Background

This is a class action for alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, et seq.  (Doc. No. 1-2.)  Plaintiff alleges that Defendant negligently and willfully violated the FCRA by failing to maintain reasonable procedures to assure the maximum possible accuracy in the preparation of the credit reports it resold regarding the settlement class members, in violation of 15 U.S.C. § 1681e(b).  (Id. ¶¶ 72–82.)  Specifically, Plaintiff alleges that Defendant resold inaccurate information from one or more of the nationwide consumer reporting agencies ("CRAs") where the consumer report contained a notation that the consumer was deceased and where either one or two of the CRAs also provided information to Defendant that did not include a notation that the consumer was deceased.  (Id.)  Plaintiff further alleges that Defendant made no effort to determine whether the consumer was in fact deceased prior to publishing the consumer report.  (Id. ¶ 59.)  As a result of Defendant's conduct, Plaintiff alleges that she has suffered concrete financial and pecuniary harm arising from monetary losses relating to credit denials, loss of use of funds, loss of credit and loan opportunities, out-of-pocket expenses, and other related costs.  (Id. ¶ 62.)  Further, Plaintiff alleges that she has suffered concrete harm in the form of financial and dignitary harm arising from the injury to credit rating and reputation.  (Id. ¶ 63.)

On February 24, 2022, Plaintiff filed a class action complaint in the Superior Court of California, County of San Diego against Defendant.  (Doc No. 1-2.)  On April 12, 2022, Defendant removed this action from the Superior Court of California, County of San Diego to this Court.  (Doc. No. 1.)  On May 23, 2022, Defendant answered the complaint.  (Doc. No. 8.)  On August 25, 2022, the parties participated in an Early Neutral Evaluation

Conference before the Honorable Andrew G. Schopler.  (Doc. No. 24.)  The parties did not reach a settlement agreement.  (Id.)  Following the conference, the parties engaged in discovery efforts, including producing documents and exchanging written discovery requests and responses.  (Doc. No. 46 at 8.)  During this time, the parties also conducted multiple meet and confers, both telephonically and through written correspondence.  (Id.)

In January 2023, the parties attended a full-day mediation with third-party neutral Rodney Max.  (Id.)  The parties exchanged mediation statements beforehand.  (Id.)  While a settlement was not reached during this mediation, the parties did make significant progress.  (Id.)  The parties continued to engage in settlement negotiations during February and March 2023, ending with a draft term sheet.  (Id.)  The parties then worked to finalize the resolution in a formal settlement agreement.  (Id.)

On March 8, 2023, the parties filed a joint motion to stay the case pending settlement negotiations.  (Doc. No. 33.)  On March 20, 2023, in lieu of a stay, the Court continued all dates and deadlines by thirty days.  (Doc. No. 36.)  On April 17, 2023, the Court held a telephonic status conference with the parties and continued all dates and deadlines by an additional seventy-five days.  (Doc. No. 37.)  On June 28, 2023, the parties filed a joint motion for extension of case deadlines.  (Doc. No. 38.)  On July 3, 2023, the Court granted the parties' joint motions and ordered Plaintiff to file a motion for preliminary approval of class action settlement by July 28, 2023.  (Doc. No. 39.)  On July 27, 2023, the parties filed a second joint motion for extension of case deadlines.  (Doc. No. 41.)  On July 28, 2023, the Court granted the parties' joint motion and ordered Plaintiff to file a motion for preliminary approval of class action settlement by August 18, 2023.  (Doc. No. 42.)  On August 18, 2023, the parties filed a joint motion for extension of time to file the motion for preliminary approval.  (Doc. No. 44.)  On August 21, 2023, the Court granted the parties' joint motion.  (Doc. No. 45.)  On August 25, 2023, Plaintiff filed the present unopposed motion requesting that the Court: (1) preliminarily approve the proposed class action settlement; (2) certify the settlement class for settlement purposes; (3) direct notice to be distributed to the settlement class; and (4) schedule a final fairness hearing.  (Doc. No. 46.)

**B.     Proposed Settlement**

The settlement agreement defines the settlement class as:

> all persons residing in the United States of America (including its territories and Puerto Rico) who were subject: (1) of a consumer report resold by Defendant to a third party within the time period of January 1, 2021 and continuing through May 2, 2023, (2) where the consumer report contained a notation that the consumer was deceased, and (3) either one or two of the nationwide consumer reporting agencies (Experian, Trans Union and Equifax) provided information to Defendant that did not include a deceased notation.

(Doc. No. 46-2 at 7, ¶ 2.22.)  Excluded from the class are "counsel of record (and their respective law firms) for any of the Parties, employees of Defendants, and employees of the Federal judiciary." (Id.)

Under the settlement agreement, Defendant will pay the settlement amount of $5,695,000.00. (Id. at 14, ¶ 4.3.1.)  Defendant will also be required to improve its reporting practices to more clearly state that: (1) the data it is reporting is precisely the data it received from the CRAs; and (2) Defendant cannot evaluate its content.  (Id. at 16–17, ¶¶ 4.3.2.1–4.3.2.2.)  Moreover, Defendant will be required to further identify to recipients of the information how to contact Defendant if they believe the information being resold by Defendant is inaccurate or incomplete.  (Id.)  Defendant continues to deny any wrongdoing and the settlement agreement does not constitute an admission or concession of liability, wrongdoing, or the lack of merit of any defense or Rule 23 argument by Defendant. (Id. at 3–4.).  The settlement agreement dismisses Defendant with prejudice and releases Defendant from all claims arising from the settlement class. (Id. at 4, 18–20, ¶¶ 4.4.1–4.4.4.)

Settlement class members will each receive pro rata payments from the fund. (Id. at 14, ¶ 4.3.1.1.)  Settlement class members receive their payment by either: (1) qualifying as an automatic payment settlement class member; or (2) submitting a claims form either by mail or via the settlement website. (Id. at 14–15, ¶¶ 4.3.1.1, 4.3.1.3.)  Settlement class members meet the automatic payment requirements if: (1) the settlement class member was

the subject of a consumer report resold by Defendant to a third party during the settlement class period that included information from at least one CRA, but not all of the reporting CRAs, where the score segment of the report indicated that the consumer was deceased; and (2) that the CRA's report does not contain a deceased notation within a tradeline. (Id. 14–15, ¶ 4.3.1.2.)  The remaining settlement class members include members who have at least one report with a tradeline stating they are deceased, but who also have reports from at least one other CRA that does not contain such tradeline.  (Id. at 15–16, ¶ 4.3.1.3.)  Class members who are entitled to an automatic payment and class members who make claims will all receive equal payments from the fund.  (Id. at 14, ¶ 4.3.1.1.)

Plaintiff has indicated that she intends to seek a class representative's services award of up to $7,500.00 from the fund.  (Id. at 26, ¶ 5.3.)  Class counsel also intends to request an attorneys' fee award of $1,423,750.00, or 25% of the settlement fund, as well as reimbursement for documented out-of-pocket expenses.  (Id.)

The parties have selected JND Legal Administration as the settlement administrator. (Id. at 9, ¶ 4.2.1.)  The settlement administrator will email or mail notices to the settlement class members and will also post the long form notice, claim form, and other documents and deadlines on a website created by the settlement administrator.  (Id. at 11–12, ¶¶ 4.2.3–4.2.4.)  Settlement class members reserve the right to object or opt out of the settlement.  (Id. at 21–22, ¶¶ 4.4.5.1, 4.4.7.)

## II.    DISCUSSION

### A.    Class Certification

Plaintiff seeks to certify a class pursuant to Federal Rule of Civil Procedure 23(b)(3) for purposes of settlement.  (Doc. No. 46 at 13–18.)  The settlement class includes all persons residing in the United States of America, including its territories and Puerto Rico, who were the subject: (1) "of a consumer report resold by Defendant to a third party within the time period of January 1, 2021 and continuing through May 2, 2023"; (2) "where the consumer report contained a notation that the consumer was deceased"; and (3) "either one or two of the nationwide consumer reporting agencies (Experian, Trans Union and Equifax)

provided information to Defendant that did not include a deceased notation." (Doc. No. 46-2 at 7, ¶ 2.22.) Excluded from the class are "counsel of record (and their respective law firms) for any of the Parties, employees of Defendants, and employees of the Federal judiciary." (<u>Id.</u>)

A plaintiff seeking to certify a class under Rule 23(b)(3) must first satisfy the requirements of Rule 23(a). Fed. R. Civ. P. 23(b); <u>see</u> <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 345 (2011). Once subsection (a) is satisfied, the purported class must then fulfill the requirements of Rule 23(b)(3). <u>Id.</u>

### 1. Rule 23(a) Requirements

Rule 23(a) establishes that one or more plaintiffs may sue on behalf of class members if all of the following prerequisites are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a).

The numerosity prerequisite is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "In general, courts find the numerosity requirement satisfied when a class includes at least 40 members." <u>Rannis v. Recchia</u>, 380 F. App'x 646, 651 (9th Cir. 2010); <u>see also</u> <u>Hilsley v. Ocean Spray Cranberries, Inc.</u>, No. 17-cv-02355-GPC-MDD, 2018 WL 6300479, *3 (S.D. Cal. Nov. 29, 2018) (quoting <u>Ikonen v. Hartz Mtn. Corp.</u>, Civ. No. 87-1275-R-IEG, 122 F.R.D. 258, 262 (S.D. Cal. Sept. 20, 1988) ("As a general rule, . . . classes of 40 or more are numerous enough."). The parties estimate that the proposed settlement class consists of approximately 27,014 members. (Doc. No. 46-2 at 9, ¶ 4.1.) The numerosity prerequisite is met.

The commonality prerequisite is met if there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[T]he key inquiry is not whether the plaintiffs have raised common questions, 'even in droves,' but rather, whether class treatment will 'generate common answers apt to drive the resolution of the litigation.'" <u>Abdullah v. U.S. Sec. Assoc., Inc.</u>, 731 F.3d 952, 957 (9th Cir. 2013) (quoting <u>Wal-Mart Stores, Inc.</u>, 564 U.S. at 350) (emphasis removed). Plaintiff argues that the proposed settlement class raises

common questions of fact relating to Defendant's standard policies and practices.  (See Doc. No. 46-2 at 15.)  Further, Plaintiff argues that the proposed settlement class raises common questions of law relating to (1) whether Defendant's reporting was compliant with the FCRA; and (2) whether Defendant's conduct was willful.  (Id.)  The commonality prerequisite is also met.

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  When determining whether the typicality prerequisite is met, courts will look at "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted).  Importantly, the typicality inquiry focuses on "the nature of the claim . . . of the class representative, and not . . . the specific facts from which it arose." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 984 (9th Cir. 2011) (quoting Hanon, 976 F.2d at 508).  Here, Plaintiff alleges that she and the proposed settlement class members were each the subject of a consumer report resold by Defendant that contained an inaccurate deceased indicator from one of the CRAs where at least one other CRA did not also report a deceased indicator. (Doc. No. 46 at 16.)  Plaintiff further alleges that her arguments relating to the reasonableness of Defendant's procedures, whether Defendant acted willfully, and the proper amount of statutory and punitive damages would advance not only Plaintiff's claims but the claims of all of the proposed settlement class members. (Id.)  The typicality prerequisite is also met.

The adequacy of representation prerequisite requires that the class representative be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  Representation is adequate if the plaintiff and class counsel (1) do not have any conflicts of interest with any other class members and (2) will "prosecute the action vigorously" on behalf of the class. Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978) (citation omitted).  Here, Plaintiff's claims against Defendant arise out of the

same underlying conduct as the proposed settlement class.  (Doc. Nos. 1-2, 46 at 17.)  Plaintiff also has the same interest in receiving relief as the proposed settlement class.  (Doc. No. 46 at 17.)  As such, there does not appear to be any potential conflicts of interest between Plaintiff and any of the other class members.  Moreover, class counsel are experienced in litigating FCRA cases, including FCRA class actions.  (See Doc. Nos. 46-1, 46-5.)  Class counsel have also diligently litigated this case through informal and formal discovery, mediation, and settlement negotiations.  (Id.)  The adequacy of representation prerequisite is met.

Accordingly, all of the prerequisites of Rule 23(a) are satisfied.

### 2.  Rule 23(b)(3) Requirements

Rule 23(b)(3) requires a court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3)'s requirements are designed "to cover cases 'in which a class action would achieve economies of time, effort, and expenses, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'"  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997) (citation omitted).  If the parties seek to certify a class for settlement purposes, "a district court need not inquire whether the case, if tried, would present intractable management problems for the proposal is that there be no trial."  Id. at 620 (citing Fed. R. Civ. P. 23(b)(3)(D)).

### i.  Predominance

A plaintiff must show "that the questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  The predominance inquiry focuses on whether the proposed class is "sufficiently cohesive to warrant adjudication by representation."  Amchem, 521 U.S. at 623 (citation omitted).  It "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the noncommon, aggregation-defeating,

individual issues." <u>Tyson Foods, Inc. v. Bouaphakeo</u>, 577 U.S. 442, 453 (2016) (citation omitted).  Plaintiff argues that all of the proposed settlement class members' claims depend on: (1) whether Defendant's reporting was compliant with the FCRA; (2) whether Defendant's conduct was willful; and (3) the proper measure of statutory and punitive damages. (Doc. No. 46 at 18.)  Plaintiff further argues that these issues do not require an individualized inquiry. (<u>Id.</u>)  As such, common questions of law and fact predominate.

### ii.    Superiority

A plaintiff must also demonstrate the superiority of maintaining a class action.  Fed. R. Civ. P. 23(b)(3).  The class action method is considered to be superior if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." <u>Valentino v. Carter-Wallce, Inc.</u>, 97 F.3d 1227, 1234 (9th Cir. 1996) (citation omitted). Here, the parties estimate that the settlement class consists of approximately 27,041 members. (Doc. No. 46-2 at 9, ¶ 4.1.)  Resolving these disputes in a single class action rather than individually would promote greater efficiency and reduce litigation costs.  As such, a class action is the superior method of adjudicating this matter.

The requirements of Rule 23(b)(3) are satisfied.  Accordingly, the Court grants preliminary certification of the proposed class.  The Court may review this finding at the final approval hearing.

### 3.    Appointment of Class Representative and Class Counsel

Plaintiff meets the commonality, typicality, and adequacy requirements of Rule 23(a).  As such, Plaintiff is appointed as class representative.  <u>See</u> <u>In re Bridgepoint Educ. Inc. Secs. Litig.</u>, No. 12-cv-1737-JM-JLB, 2015 WL 224631, *8 (S.D. Cal. Jan. 15, 2015) (noting the inquiry as to whether a plaintiff should be appointed as class representative is governed by Rule 23).

Under Rule 23(g), a court that certifies a class must appoint class counsel.  Fed. R. Civ. P. 23(g)(1).  A court must consider the following factors when appointing class counsel: "(i) the work counsel has done in identifying or investigating potential clams in the action; (ii) counsel's experience in handling class actions, other complex litigation, and

the types of claims asserted in the action; (iii) counsels' knowledge of the applicable law; and (iv) the resources that counsel will commit to represent the class." Fed. R. Civ. P. 23(g)(1)(A). The court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interest of the class." Fed. R. Civ. P. 23(g)(1)(B).

Here, Berger Montague PC and Kelly Guzo, PLC have a good understanding of the issues and have actively litigated this case through informal and formal discovery, mediation, and settlement negotiations. (See Doc. Nos. 46-1, 46-5.) Berger Montague PC and Kelly Guzo, PLC also have significant prior experience litigating FCRA cases, including FCRA class actions. (Id.) Accordingly, Berger Montague PC and Kelly Guzo, PLC are appointed as class counsel pursuant to Federal Rule of Civil Procedure 23(g).

## B. The Settlement

Rule 23(e) requires the Court to determine whether a proposed settlement is "fundamentally fair, adequate, and reasonable." Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003) (citation omitted). To make this determination, the Court must consider a number of factors, including: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. Id.

"In addition, the settlement may not be the product of collusion among the negotiating parties." In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)). "Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011) (citation omitted). "Signs of

collusion include: (1) a disproportionate distribution of the settlement fund to counsel; (2) negotiation of a 'clear sailing provision'; and (3) an arrangement for funds not awarded to revert to defendant rather than to be added to the settlement fund." Hefler v. Wells Fargo & Company, No. 16-cv-05479-JST, 2018 WL 4207245, *8 (N.D. Cal. Sept. 4, 2018) (quoting In re Bluetooth, 654 F.3d at 947).

Given that some of these factors cannot be fully assessed until a court conducts the final approval hearing, "a full fairness analysis is unnecessary at this stage." Alberto v. GMRI, Inc., 252 F.R.D. 652, 665 (E.D. Cal. 2008) (citation omitted). Rather, at the preliminary approval stage, a court need only review the parties' proposed settlement to determine whether it is within the permissible "range of possible approval" and thus, whether the notice to the class and the scheduling of a fairness hearing is appropriate. Id. at 666 (citation omitted). Preliminary approval of a settlement and notice to the class is appropriate if (1) "the proposed settlement appears to be the product of serious, informed, and non-collusive negotiations"; (2) "has no obvious deficiencies"; (3) "does not improperly grant preferential treatment to class representatives or segments of the class"; and (4) "falls within the range of possible approval." In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079–80 (N.D. Cal. April 12, 2007) (citation omitted); see also Beaver v. Tarsadia Hotels, No. 11-cv-01842-GPC-KSC, 2017 WL 2268853, *2–*3 (S.D. Cal. May 24, 2007).

In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." Seattle, 955 F.2d at 1276. Additionally, the Ninth Circuit favors deference to the "private consensual decision of the [settling] parties," particularly where the parties are represented by experienced counsel and negotiation has been facilitated by a neutral party. See Rodriguez v. West Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009) (citation omitted).

After reviewing the proposed settlement in light of the above factors, the Court concludes that preliminary approval is appropriate. The proposed settlement agreement

appears to be the result of serious, informed, and non-collusive negotiations.  See In re Tableware Antitrust Litig., 484 F. Supp. 2d at 1079–80.  Prior to reaching the settlement agreement, the parties engaged in informal and formal discovery.  (Doc. No. 46 at 19.)  During that time, Defendant produced and Plaintiff reviewed nearly 6,000 pages of documents regarding the credit reports at issue in the case, including exemplar report data.  (Id.)   On August 25, 2022, the parties participated in an Early Neutral Evaluation Conference before the Honorable Andrew G. Schopler.  (Doc. No. 24.)  In January 2023, Plaintiff represents that the parties engaged in a full-day mediation with third-party neutral Rodney Max.  (Doc. No. 46 at 8.)   While a settlement was not reached during this mediation, the parties did make significant progress.  (Id.)  The parties continued to engage in settlement negotiations during February and March 2023, ending with a draft term sheet.  (Id.)  The parties then worked to finalize the resolution in a formal settlement agreement.  (Id.)  Considering this history, the record indicates the parties "carefully investigated the claims before reaching a resolution."   Ontiveros v. Zamora, 303 F.R.D. 356, 371 (E.D. Cal. 2014) (citation omitted); see also Loreto v. Gen. Dynamics Info. Tech., Inc., No. 19-cv-1366-GPC, 2021 WL 3141208, *4 (S.D. Cal. July 26, 2021) (finding that a settlement "facilitated by an experienced mediator after the exchange of sufficient discovery to allow the parties to ascertain Defendant's potential exposure," supported preliminary approval).

The proposed settlement agreement also does not appear to have any obvious deficiencies, does not improperly grant preferential treatment to the class representative or segments of the class, and falls within the range of possible approval.  See In re Tableware Antitrust Litig., 484 F. Supp. 2d at 1079–80.  Class counsel are experienced in consumer class action litigation and FCRA litigation.  See Romero v. Securus Tech., Inc., No. 16-cv-1283-JM, 2020 WL 3250599, *6 (S.D. Cal. June 16, 2020) (finding that class counsel's "extensive experience in complex litigation and class actions," supported preliminary approval).  Further, class counsel represent that while Plaintiff's claims are meritorious, continuing to litigate the case would pose significant risks for the class and the settlement offers meaningful relief.  (Doc. Nos. 46-1, 46-5.)  The proposed settlement also calls for

the certification of a single class.  (Doc. No. 46-2 at 7, ¶ 2.2.)  And while some of the settlement class members are required to submit a claim form in order to receive payment, this requirement does not appear to improperly grant preferential treatment to the class members entitled to automatic payments because, unlike the class members entitled to automatic payments, these class members have notations in their credit files that suggest they may have passed away.  (See id. at 15–16, ¶ 4.3.1.3.)  Importantly, every participating settlement class member will receive equal payments from the fund.  (Id. at 14, ¶ 4.3.1.1.)

Moreover, the proposed settlement agreement provides for a settlement fund of $5,695,000.00.  (Id. at 9.)  According to Plaintiff, the expected monetary recovery of $607 net per class member is 60.7% of the likely award if the case had proceeded all the way through a final judgment in Plaintiff's favor.  (Id. at 22.)  This falls within the range of possible approval.  See Loeza v. JPMorgan Chase Bank, NA, No. 13-cv-0095-L-BGS, 2015 WL 13357592, *8 (S.D. Cal. Aug. 8, 2015) ("In determining whether a settlement agreement is substantively fair to the class, a court must balance the value of plaintiffs' expected recovery against the value of the settlement offer."  (citing In re Tableware Antitrust Litig., 484 F. Supp. 2d at 1080)); In re Zynga Inc. Sec. Litig., No. 12-cv-04007-JSC, 2015 WL 6471171, *10 (N.D. Cal. Oct. 27, 2015) ("A cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."  (citation omitted)).  The proposed settlement agreement also provides for non-monetary relief, including changes to Defendant's practices and policies relating to deceased indicator reporting.  See Patel v. Trans Union, LLC, No. 14-cv-00522-LB, 2018 WL 1258194, *6 (N.D. Cal. March 11, 2018) ("When determining the value of a settlement, courts consider the monetary and non-monetary benefits that the settlement confers."  (citations omitted)).

Class counsel also intends to request an attorneys' fee award of $1,423,750.00, or 25% of the settlement fund, as well as reimbursement for documented out-of-pocket expenses.  (Doc. No. 46-2 at 26, ¶ 5.3.)  The request for attorneys' fees is within the range of acceptable attorneys' fees in Ninth Circuit cases.  See Vasquez v. Coast Valley Roofing,

Inc., 266 F.R.D. 482, 491 (E.D. Cal. Mar. 6, 2010) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% the total settlement value, with 25% considered the benchmark." (citations omitted)); see also In re Bluetooth, 654 F.3d at 942 (noting that "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award" in class action settlements).  Additionally, the proposed incentive award of $7,500 for Plaintiff appears reasonable.  (Doc. No. 46-2 at 26, ¶ 5.3); see In re Mego Fin. Corp. Sec. Litig., 213 F.3d at 463 (affirming an incentive award of $5,000 to two plaintiff representatives of 5,400 potential class members in $1.75 million settlement, where incentive payment constituted only 0.57% of the settlement fund).

For the foregoing reasons, the Court conditionally grants preliminary approval of the proposed settlement.  The Court reserves judgment on the reasonableness of the attorneys' fees for the final approval hearing.

## C.    Approving Class Notice

Class notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  Roes, 1–2 v. SFBSC Mgmt., LLC, 944 F.3d 1035, 1045 (9th Cir. 2019) (quoting Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 174 (1974)).  In addition, the class notice must satisfy the content requirements of Rule 23(c)(2)(B), which provides the notice must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

### 1.    Content of Notice

The content of the proposed notices meets the requirements of Rule 23(c)(2)(B).  In clearly understandable language, the notices provide the following: a description of the

lawsuit; a description of the settlement class; an explanation of the material elements of the settlement; a statement declaring that class members may exclude themselves from or object to the settlement; a description that explains how class members may exclude themselves from or object to the terms of the settlement; and a description of the fairness hearing.  (<u>See</u> Doc. No. 46-2, Exs. B, C.)

> ## 2.   <u>Method of Notice</u>

The proposed method of notice is also reasonable.  The parties have requested JND Legal Administration to be their settlement administrator.  (<u>Id.</u> at 9, ¶ 4.2.1.)  After the Court enters a preliminary approval order, and within twenty-one days of receiving the settlement class notice list from the parties, the settlement administrator will send the notice via U.S. mail, postage prepaid.  (<u>Id.</u> at 11, ¶ 4.2.3.)  The settlement administrator will also use commercially reasonable methods to locate email addresses for class members, and will send notice to class members via email as well.  (<u>Id.</u>)  For up to thirty days following the mailing of the notice via U.S. mail, the settlement administrator will re-mail the notice via standard U.S. mail, postage prepaid, to those settlement class members whose notices were returned as undeliverable to the extent an alternative mailing address can be reasonably located.  (<u>Id.</u> at 11–12, ¶ 4.2.3.)  Moreover, thirty days after sending the notice, the settlement administrator will send a reminder notice via email.  (<u>Id.</u> at 12, ¶ 4.2.3.)  The settlement administrator will also create and maintain the settlement class website.  (<u>Id.</u> at 12, ¶ 4.2.4.)  The settlement class website will be activated no later than five days prior to the mailing of the notice.  (<u>Id.</u>)  The settlement administrator will post important settlement documents, such as the operative complaint, the notice, the settlement agreement, and the preliminary approval order to the settlement class website.  (<u>Id.</u>)  The settlement administrator will also post the long form notice and the claim form to the settlement class website.  (<u>Id.</u>)  Settlement class members will also be able to submit claim forms through the settlement class website.  (<u>Id.</u>)

After reviewing the content and the proposed method of providing notice, the Court determines that the notice is adequate and sufficient to inform the class members of their

rights.   Accordingly, the Court approves the form and manner of giving notice of the proposed settlement.   The Court also requests that the parties submit a proposal detailing how notice will be given to class members should the final approval hearing be conducted telephonically.

### D.   Scheduling Fairness Hearing

The Court schedules the final approval hearing for **Monday, February 26, 2024**, at **10:30 a.m. Pacific Time**.   The settlement administrator must send class notice as set forth in the settlement agreement by **November 6, 2023**.   Plaintiff and class counsel must file all papers in support of final approval, the plan of allocation, and any fee and expense application or compensatory award by **December 15, 2023**.   Potential class members submitting claims must return claim forms by **January 5, 2024**.   Potential class members must return requests for exclusion and objections by **January 5, 2024**.   Any reply papers must be filed by **January 12, 2024**.   Plaintiff and class counsel must also file with the Court details outlining the scope, method, and results of the notice plan, and a list of potential class members who have timely and validly excluded themselves from the settlement by **February 12, 2024**.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## III.   CONCLUSION

The Court certifies the class for purposes of settlement, preliminarily approves of the proposed settlement, appoints class representative and class counsel, and approves the form and manner of the notice of the proposed settlement agreement to the settlement class members.  The Court requests that the parties submit a proposal detailing how notice will be given to class members should the final approval hearing be conducted telephonically. The Court also appoints JND Legal Administration as the settlement administrator. Additionally, the Court sets the final approval hearing for **Monday, February 26, 2024**, at **10:30 a.m. Pacific Time**.  Plaintiff must file a motion for final approval of the settlement, and any motions for fee awards and incentive awards on or before **December 15, 2023**.

**IT IS SO ORDERED.**

DATED:  October 2, 2023

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT