Sophia M. Rios (SBN 305801)
BERGER MONTAGUE PC
401 B Street, Suite 2000
San Diego, CA 92101
T. (619) 489-0300; F. (215) 875-4604
srios@bm.net

E. Michelle Drake, pro hac vice
Joseph C. Hashmall, pro hac vice
BERGER MONTAGUE PC
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
T. (612) 594-5999; F. (612) 584-4470
emdrake@bm.net; jhashmall@bm.net

Kristi C. Kelly, pro hac vice
Casey Nash, pro hac vice
Andrew Guzzo, pro hac vice
KELLY GUZZO PLC
3925 Chain Bridge Rd., Suite 202
Fairfax, VA 22030
T. 703.424.7570
kkelly@kellyguzzo.com; casey@kellyguzzo.com
aguzzo@kellyguzzo.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLENE STEINBERG,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>CORELOGIC CREDCO, LLC,<br><br>　　　　　Defendant. | CASE NO.  3:22-cv-00498-H-SBC<br><br>**PLAINTIFF'S UNOPPOSED MOTION & MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: February 26, 2024<br>Time: 10:30 a.m.<br>Courtroom: 12A<br>Judge: Marilyn L. Huff |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MOTION

Plaintiff Marlene Steinberg ("Plaintiff"), individually and on behalf of the proposed Settlement Class, respectfully moves the Court for final approval of a proposed settlement with Defendant CoreLogic Credco, LLC ("Defendant"). Plaintiff requests the Court grant final approval to the settlement and order distribution of the settlement fund in accordance with the Settlement Agreement. Defendant does not oppose the relief sought in this Motion.

# TABLE OF CONTENTS

I.    RELEVANT BACKGROUND........................................................................1

    A.    Summary of Claims and Litigation History.................................1

    B.    Key Settlement Terms..................................................................3

    C.    Class Notice and Reaction...........................................................5

II.   ARGUMENT...........................................................................................6

    A.    The Strength of Plaintiff's Case and the Litigation Risks Weigh in Favor of Settlement..................................................................7

    B.    The Relief Provided is Significant and Weighs Strongly in Favor of Approval.................................................................................8

    C.    The Stage of the Proceedings and Amount of Discovery Completed Supports Approval....................................................11

    D.    The Experience and Views of Counsel Support the Settlement........12

    E.    The Reaction of the Class to Date has been Positive.................12

    F.    The Rule 23(e) Factors Weigh in Favor of Approval................14

III.  CONCLUSION......................................................................................15

# **TABLE OF AUTHORITIES**

<u>Cases</u>

*Blount v. Host Healthcare, Inc.*, No. 21-310, 2022 WL 1094616 (S.D. Cal. April 12, 2022) ................................................................................................ 12

*Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151 (11th Cir.1991) ............ 8

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-CV-05944, 2020 WL 1873554 (N.D. Cal. Mar. 11, 2020) .......................................................... 15

*Centuouri v. Experian Info. Solutions, Inc.*, 431 F. Supp. 2d 1002 (D. Ariz. 2006) ........................................................................................................... 8

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) .......... 6, 14

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1991) .......... 6, 14

*Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015) .............. 13

*Dickerson v. Cable Commc'ns, Inc.*, No. 12-cv-12, 2013 WL 6178460 (D. Or. Nov. 25, 2013) ............................................................................................ 6

*Gauci v. Citi Mortg.*, No. 11-cv-01387, 2011 WL 3652589 (C.D. Cal. Aug. 19, 2011) ....................................................................................................... 10-11

*Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329 (9th Cir.1995) .......... 8

*Gutierrez-Rodriguez v. R.M. Galicia, Inc.*, No. 16-CV-00182-H-BLM, 2018 WL 1470198 (S.D. Cal. Mar. 26, 2018) ..................................................... 6

*Howard v. Blue Ridge Bank*, 371 F. Supp. 2d 1139 (N.D. Cal. 2005) ............ 10

*In re Immune Resp. Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) .......... 11, 12

*Jenson v. First Tr. Corp.*, No. CV 05-3124, 2008 WL 11338161 (C.D. Cal. June 9, 2008) ........................................................................................................ 15

*Kendall v. Odonate Therapeutics, Inc.*, No. 3:20-CV-01828-H-LL, 2022 WL 1997530 (S.D. Cal. June 6, 2022) ................................................................ 6

*Lenox v. Equifax Info. Servs. LLC*, 2007 WL 1406914 (D. Or. May 7, 2007) ....... 8

*In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015) .......... 13

*In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420, 2020 WL 7264559

(N.D. Cal. Dec. 10, 2020) .................................................................................. 15

*Loomis v. Slendertone Dist., Inc.*, No. 19-854, 2021 WL 873340 (S.D. Cal. March 9, 2021) ........................................................................................................... 14

*Murphy v. City of El Cajon*, No. 18-698, 2019 WL 3936143 (S.D. Cal. Aug. 19, 2019) ................................................................................................................. 11

*Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011) ......................................... 4

*Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) .............................................................................................................................. 12

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) .................................. 12

*Rael v. Children's Place, Inc.*, No. 16-370, 2020 WL 434482 (S.D. Cal. Jan. 28, 2020) ................................................................................................................. 13

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ............................. 6

*Sanft v. Sims Grp. USA Corp.*, No. 19-CV-08154-JST, 2023 WL 6851992 (N.D. Cal. Oct. 16, 2023) .............................................................................................. 7

*Shames v. Hertz Corp.*, No. 07-cv-2174, 2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) ................................................................................................................. 13

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ............................................ 11

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) ..................................... 6

*Sweet v. Cardona*, 641 F. Supp. 3d 814 (N.D. Cal. 2022) ................................... 14

*Tait v. BSH Home Appliances Corp.*, No. 10-cv-0711, 2015 WL 4537463 (C.D. Cal. July 27, 2015) ......................................................................................... 13

*Touhey v. U.S.*, No. 08-cv-01418, 2011 WL 3179036 (C.D. Cal. July 25, 2011) 13

*In re Toys R Us-Delaware, Inc.–Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014) .............................................................. 9

*True v. American Honda Motor Co.*, 749 F. Supp. 2d 1052 (C.D. Cal. 2010) ..... 15

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ............................... 11

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597 (9th Cir. 2018) ..................................................................................... 10

*In re Wash. Public Power Supply Sys. Secs. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ........................................................................................................... 14

*White v. Experian Info. Solutions, Inc.*, 803 F. Supp. 2d 1086 (C.D. Cal. 2011) 13

*In re WorldCom, Inc. Sec. Litig.*, No. 02-3288, 2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004) ........................................................................................................ 14

*Yanez v. HL Welding, Inc.*, 2021 WL 3054986 (S.D. Cal. July 20, 2021) .......... 12

*Zepeda v. PayPal, Inc.*, 2017 WL 1113293 (N.D. Cal. March 24, 2017) ........... 13

Rules & Statutes

15 U.S.C. § 1681 ............................................................................................. *passim*

Fed. R. Civ. P. 23 ........................................................................................... *passim*

Other Authority

Newberg on Class Actions § 11:41 (4th ed. 2006) ............................................... 6

**MEMORANDUM**

On October 2, 2023, the Court granted preliminary approval of the proposed settlement of this action.  (ECF No. 49.)  The settlement provides meaningful monetary relief for the Settlement Class, and noteworthy injunctive relief focused on the conduct that led to the claims in this case.  This settlement will result in an impressive $5.695 million common fund recovery for the Class, which, given the current claims rate, means that over 27% of the Class will receive payments.  The settlement also includes injunctive relief. The settlement exceeds the legal standard set by Rule 23 for approval.

Accordingly, Plaintiff Marlene Steinberg ("Plaintiff"), individually and on behalf of the Settlement Class, respectfully requests the Court enter an order granting final approval of the settlement with Defendant CoreLogic Credco, LLC ("Defendant"), which fully resolves this class action brought under the Fair Credit Reporting Act ("FCRA").

## I.    RELEVANT BACKGROUND

### A.    Summary of Claims and Litigation History

The substance and history of this action is recounted in detail in Plaintiff's preliminary approval motion and is summarized here. (*See* ECF No. 46.)

On February 24, 2022, Plaintiff filed her initial class action complaint in San Diego County Superior Court against Defendant, alleging that Defendant had negligently and willfully violated the FCRA, 15 U.S.C. § 1681e(b).  (ECF No. 1-2.) Specifically, Plaintiff alleged that Defendant resold inaccurate information from one or more of the nationwide consumer reporting agencies (Equifax, Experian, or TransUnion) where the consumer report contained a notation that the consumer was deceased and where either one or two of the nationwide consumer reporting agencies also provided information to Defendant that did not include a deceased

1  notation. (*Id.*) On April 12, 2022, Defendant removed to this Court (ECF No. 1)

2  and answered the complaint on May 23, 2022 (ECF No. 8).

3      The parties participated in an Early Neutral Evaluation with Judge Schopler

4  on August 25, 2022 (ECF No. 24). While the case did not settle at that time, it

5  prompted ongoing discussions between the parties regarding settlement potential,

6  as well as conversations about additional discovery that would be required to fully

7  inform the parties' positions. The parties continued discovery efforts over the

8  coming months, exchanging written requests and responses and productions of

9  documents. The parties also conducted multiple meet and confers regarding

10  document and data production, both telephonically and through written

11  correspondence. By the end of the settlement process, Defendant had produced

12  over 5,000 pages of documents as well as data regarding tens of thousands of

13  consumer reports, which Class Counsel devoted significant time to reviewing and

14  understanding, both for purposes of understanding the strengths and weaknesses of

15  Plaintiff's claims, but also for the purpose of identifying what ultimately became

16  the Settlement Class.

17      In January 2023, the parties attended a full day mediation with third party

18  neutral Rodney Max, exchanging detailed mediation statements beforehand. While

19  a settlement was not reached in full at the mediation, the parties made significant

20  progress and continued to engage in arms' length negotiations through counsel

21  during February and March 2023, resulting in a terms sheet. Defendant also worked

22  diligently to compile supplemental data identifying class members and categorizing

23  them in the way required by the Settlement Agreement. Class Counsel additionally

24  methodically reviewed the confirmatory discovery and data produced to better

25  evaluate the Class's settlement position. Ultimately, the parties were able to

26  formalize their resolution in the Settlement Agreement, which was granted

27  preliminary approval on October 2, 2023.

28

## B.   Key Settlement Terms

The settlement resolves, on a classwide basis, Plaintiff's claim that Defendant failed to maintain reasonable procedures to ensure maximum possible accuracy related to its reporting that consumers were deceased when they were alive.  The Settlement Class is defined as:

> all persons residing in the United States of America (including its territories and Puerto Rico) who were the subject: (1) of a consumer report resold by Defendant to a third party within the time period of January 1, 2021 and continuing through May 2, 2023, (2) where the consumer report contained a notation that the consumer was deceased, and (3) either one or two of the nationwide consumer reporting agencies (Experian, Trans Union and Equifax) provided information to Defendant that did not include a deceased notation.

(Settlement Agreement ("SA") ¶ 2.22.)

The parties identified approximately 26,833 Settlement Class Members. Should the Court grant final approval, Defendant will pay $5,695,000 as a common fund for the Settlement Class.  (*Id.* ¶ 4.3.1.)  Settlement Class Members will each receive *pro rata* payments from the fund.  (*Id.* ¶ 4.3.1.1.)  Approximately 4,622 Settlement Class Members will receive those payments automatically, without being required to file a claim form.  (*Id.* ¶ 4.3.1.2.)  Those Settlement Class Members meet the following conditions: (1) the Settlement Class Member was the subject of a consumer report resold by Defendant to a third party during the Settlement Class Period that included information from at least one nationwide consumer reporting agency (but not all of the reporting nationwide consumer reporting agencies) where the score segment of the report indicated that the consumer was deceased; and (2) that nationwide consumer reporting agency's report does not contain a deceased notation within a tradeline.

The remaining Settlement Class Members, all of whom have at least one report with a tradeline stating they are deceased, but who also have reports from at least one other bureau that contains no such tradelines, are required to submit a

simple Claim Form attesting that they are alive (*id.* ¶ 4.3.1.3). Class Members who are entitled to an automatic payment and Class Members who make claims will all receive equal payments from the fund. (*Id.* ¶ 5.3.1.) The precise amount of money each Class Member will receive will depend on the total number of claims filed. Counsel will file a notice with the Court prior to the final approval hearing stating the number of claims filed and the amount of the payment each Class Member will receive.

If settlement checks are not cashed, remaining funds will be donated to the Homeownership Preservation Foundation and Habitat for Humanity. These non-profit organizations are focused on assisting consumers to obtain sustainable housing. The services they provide include financial education, foreclosure prevention assistance, and housing counseling. These organizations' missions are aligned with Class Members' interests because many Class Members were seeking housing, which is why Defendant sold a consumer report about them in the first instance. Defendant is a nationwide leading provider of housing-related credit reports (associated with mortgage applications, rental applications, refinancing applications, and more). Thus, many Class Members were seeking housing and, based on Defendant's reporting, may have had a need for housing-related consumer assistance to navigate Defendant's reporting.. *See Nachshin v. AOL, LLC*, 663 F.3d 1034, 1039 (9th Cir. 2011) ("*[C]y pres* distribution must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members."). No portion of the settlement fund will revert to Defendant in any circumstance.

Defendant has also agreed to injunctive relief in the settlement directed at the claims alleged by Plaintiff. Specifically, Defendant has agreed to improve its reporting practices to more clearly identify the parameters of the data it is reporting and to provide further instructions for how consumers can address inaccurate or incomplete information.

In exchange for the settlement's benefits, Settlement Class Members will release only claims that were or could have been raised in this litigation, namely claims relating to the inclusion of any notations or indicators that the consumer was deceased in reports published by Defendant.  (SA ¶ 4.4.1.)

### C.   Class Notice and Reaction

On November 6, 2023, JND Legal Administration mailed and emailed Notice to the Settlement Class Members in accordance with the procedures outlined in the Settlement Agreement.  (Declaration of Ryan Bahry ("Bahry Decl.") ¶ 11.) On November 1, 2023, JND also activated the Settlement Website and a toll-free telephone line for Class Members with questions.  (*Id.* ¶¶ 16, 18.)  Further, on December 6, 2023, JND sent a reminder notice to those who were in the Claim Form group and had not yet returned a Claim Form.  (*Id.* ¶¶ 14, 15.)  Additionally, throughout the Notice Period, JND sent Notices to those Settlement Class Members whose had returned undeliverable with forwarding addresses or where alternative addresses were found by JND using its industry-standard databases.  (*Id.* ¶ 12.)

As of December 12, 2023, there have been zero opt outs, and zero objections.  (*Id.* ¶¶ 21, 23.)  2,275 Claim Forms have been received.  (*Id.* ¶ 25.)  Twenty-one days remain in the Claims Period.  (*Id.* ¶ 24.)  Given that reminder notice was mailed on December 6, Class Counsel expects additional claims to be filed. At current claims rates, approximately 27% of the Class will receive a payment from the settlement fund.

The Settlement Administrator has also ensured compliance with the notice requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b), providing notice of the proposed settlement to the appropriate officials.  (*Id.* ¶ 4.)

Concurrently with this Motion, Plaintiff and Class Counsel are also filing the Motion for Attorneys' Fees, Costs, and Class Representative Service Award, which JND will post to the Settlement Website, within twenty-four hours of filing, for Class Members to access and review.

## II.    ARGUMENT

There is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).  Courts may approve proposed class action settlements if they are found to be "fair, adequate, and reasonable." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1292 (9th Cir. 1991).  The court begins its analysis with an "initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." Newberg on Class Actions § 11:41 (4th ed. 2006); *accord*, *Dickerson v. Cable Commc'ns, Inc.*, No. 12-cv-12, 2013 WL 6178460, at *2 (D. Or. Nov. 25, 2013) ("Courts within the Ninth Circuit 'put a good deal of stock in the product of an arms[]length, non-collusive, negotiated resolution.'") (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

> Before approving a class action settlement, the Court must determine whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). In reaching this determination, the Court must consider a number of factors, including: (1) the strength of the plaintff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004).

*Gutierrez-Rodriguez v. R.M. Galicia, Inc.*, No. 16-CV-00182-H-BLM, 2018 WL 1470198, at *4 (S.D. Cal. Mar. 26, 2018) (Huff, J.).  Proposed settlements "must additionally meet the factors enumerated in Federal Rule of Civil Procedure 23(e)(2)(A)–(D)." *Kendall v. Odonate Therapeutics, Inc.*, No. 3:20-CV-01828-H-LL, 2022 WL 1997530, at *4 (S.D. Cal. June 6, 2022) (Huff, J.).  Those factors are:

1    (A) the class representatives and class counsel have adequately represented the class;

2    (B) the proposal was negotiated at arm's length;

      (C) the relief provided for the class is adequate, taking into account:

3         (i) the costs, risks, and delay of trial and appeal;

4         (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

5         (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

         (iv) any agreement required to be identified under Rule 23(e)(3); and

6    (D) the proposal treats class members equitably relative to each other.

7  Fed. R. Civ. P. 23.[1]

8       For the reasons set forth below, all of the relevant factors weigh in favor of

9  granting final approval to the parties' settlement, and following the final hearing,

10  the Court should enter the Final Approval Order and approve the distribution of the

11  settlement fund.

12  ## A.     The Strength of Plaintiff's Case and the Litigation Risks Weigh in

13          Favor of Settlement

14       While Plaintiff strongly believed in the merits of her case, there existed

15  substantial risks in litigation that could have resulted in no recovery for Plaintiff

16  and the Settlement Class.  Plaintiff would have had to win a contested motion for

17  class certification, survive summary judgment motion practice, and ultimately,

18  prevail at trial.  Each of these stages, of course, poses risk to Plaintiff's likelihood

19  of success.

20       In particular, Plaintiff faced risk on the issue of willfulness.  Unlike many

21  consumer protection statutes, the FCRA is not a strict liability statute.  Under the

22  FCRA, a plaintiff can recover only where the defendant has acted negligently or

23

24  [1] Courts have noted that "factors were not designed to displace any factor [developed under existing circuits' precedent], but rather to focus the court and the

25  lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Sanft v. Sims Grp. USA Corp.*, No. 19-

26  CV-08154-JST, 2023 WL 6851992, at *3 (N.D. Cal. Oct. 16, 2023) (quotation

27  omitted).  This brief will therefore address the Ninth Circuit factors first, and then briefly address the factors in the Rule, to the extent to which they were not already

28  covered.

1   willfully.   Where the defendant's violation was at most negligent, recovery is

2   limited to actual damages.  *See* 15 U.S.C. §§ 1681n(a)(1); 1681o(a)(1).  Therefore,

3   in order to obtain a certain monetary recovery for all member of the class, Plaintiff

4   would have had to prove not only that Defendant violated the FCRA, but that it did

5   so willfully.  Throughout this litigation, Defendant has vigorously contested that it

6   willfully (or even negligently, for that matter) violated the FCRA.  *See Guimond v.*

7   *Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 ⁽9th Cir.1995) ("The

8   reasonableness of the procedures and whether the agency followed them will be

9   jury questions in the overwhelming majority of cases."); *Cahlin v. Gen. Motors*

10  *Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir.1991); *Lenox v. Equifax Info.*

11  *Servs. LLC*, 2007 WL 1406914, *6 (D. Or. May 7, 2007) ("the determination as to

12  whether defend'nt's action or inaction rises to the level of willfulness so as to violate

13  the statutory 'bligations of the FCRA is also a question of fact"); *Centuouri v.*

14  *Experian Info. Solutions, Inc.*, 431 F. Supp. 2d 1002, 1007 (D. Ariz. 2006)

15  (declining to enter summary judgment on the issue of willfulness in a case involving

16  the reasonableness of consumer protection procedures).

17      Nor was willfulness here just the generic risk presented in most FCRA

18  litigation.  In cases brought against consumer reporting agencies like Defendant,

19  who merge and resell information from other consumer reporting agencies

20  ("resellers," in the statutory language), defendants often argue that there is no

21  willful violation in relying on data from other consumer reporting agencies, who,

22  they argue, must have been relying on their own reasonable procures before

23  reporting it.  Plaintiff strongly disagrees with this argument, but recognizes that it,

24  in litigation, it posed major risk to recovery for the Class.

25      **B.    The Relief Provided is Significant and Weighs Strongly in Favor of**

26          **Approval**

27      The settlement should be approved because it not only offers Settlement

28  Class Members monetary relief that is comparable or exceeds recoveries approved

8

in similar cases, it also provides meaningful non-monetary relief in the form of practice changes that directly address the claims at issue.

Plaintiff sought statutory damages under the FCRA, which provides for damages of between $100 and $1,000 for each willful violation. 15 U.S.C. § 1681n(a)(1). Due to the difficulties inherent in establishing that violations were willful, it is common for FCRA class actions to settle for less than $100 per class member. *See*, *e.g.*, *In re Toys R Us-Delaware, Inc.–Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453-4 (C.D. Cal. 2014) ("A $5 or $30 award, therefore, represents 5% to 30% of the recovery that might have been obtained. This is not a *de minimis* amount. Given the likelihood that plaintiffs would have been unable to prove actual damages and the risk that they would have been unable to prove willfulness and recover any damages at all, the court finds that the amount of the settlement weighs in favor of approval."). The estimated net recovery here of approximately $606 per eligible Class Member, which is over the mid-point of the range of statutory recovery, strongly supports the fairness of the settlement.

The recovery that each Settlement Class Member is estimated to receive is thus in line with, or higher, than other approved settlements challenging alleged inaccurate reporting under the FCRA. *See*, *e.g.*, *Pang v. Credit Plus*, No. 1:21-cv-00122, ECF No. 61 (D. Md. 2021) (final approval of settlement regarding deceased reporting where class members needed to file claim to recover; recovering class members received roughly $430); *Roe v. IntelliCorp Records, Inc.*, No. 12-2288, ECF No. 139 (N.D. Ohio June 5, 2014) (final approval of settlement of alleged inaccurate reporting, and other FCRA claims, providing for $50-$270 net per class member); *Ryals v. HireRight Sols. Inc.*, No. 09-625, ECF No. 127 (E.D. Va. Dec. 22, 2011) (final approval of settlement involving §1681e(b) claims, providing $15-$200 *gross* per class member recovery); *Ori v. Fifth Third Bank, Fiserv, Inc.*, No. 08-432, ECF No. 217 (E.D. Wis. Jan. 10, 2012) (final approval of settlement of alleged inaccurate mortgage loan reporting, claims-made, each claimant receiving

approximately $55); *Speers v. Pre-Employ.com, Inc.*, No. 13-1849, ECF No. 83 (D. Or. Feb. 10, 2016) (final approval of settlement of failure to maintain strict procedures when reporting adverse public record information, resulting in approximately $153 net per class member); *Villaflor v. Equifax Info. Servc. LLC*, No. 09-329, ECF No. 177 (N.D. Cal. May 3, 2011) (final approval of settlement of §1681e(b) claims, providing credit monitoring for class members with a retail value of $155). Nor does any defect arise from the fact that some of the Settlement Class are required to return a Claim Form in order to recover. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 613 (9th Cir. 2018) (no defect with settlement that required some class members to "take additional steps to claim their benefits under the settlement"). The Claim Form contained a simple attestation that the Settlement Class Member was alive – this was appropriate given that the group required to return the Form had at least one tradeline that indicated they were deceased at the time of the report. The simple Claim Form was thus essential to ensuring the given consumer was appropriately included in the Settlement Class.

The settlement also includes important injunctive relief—practice changes by Defendant to directly address Plaintiff's claims about deceased indicator reporting. This relief is noteworthy, as Defendant is "the nation's number one provider of merged and specialized credit reports" (www.credcoservices.com) and thus it is likely Settlement Class Members will have their credit reports furnished by Defendant again, and the practice changes will help to ensure accurate reporting. This non-monetary benefit is even more significant given that it is not settled law that the FCRA provides a private right to injunctive relief. *See*, *e.g.*, *Howard v. Blue Ridge Bank*, 371 F. Supp. 2d 1139, 1145 (N.D. Cal. 2005) (discussing split in federal courts and ultimately striking request for injunctive relief in FCRA case). In fact, the weight of the authority is that such relief is unavailable to FCRA plaintiffs in litigation. *See Gauci v. Citi Mortg.*, No. 11-cv-01387, 2011 WL

10

3652589, at \*3 (C.D. Cal. Aug. 19, 2011) ("District courts in the Ninth Circuit agree that a private party may not obtain injunctive relief under the FCRA."). Accordingly, this benefit is noteworthy, and likely would not have been achievable absent this settlement.  The importance of the injunctive relief should be considered as a "relevant circumstance" in analyzing the value of the settlement.  *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002)).

**C.    The Stage of the Proceedings and Amount of Discovery Completed Supports Approval**

This action had been vigorously investigated, litigated, and negotiated, at the time of settlement.  Prior to mediation, Plaintiff researched and drafted the complaint, after vetting and investigating potential claims, and the parties exchanged considerable formal and informal discovery, as well as detailed submissions prior to mediating with an experienced third-party neutral.  Only after attending a full day mediation and several weeks of further discussions and negotiations through counsel, and with additional assistance from the mediator, was an agreement reached.  Further, Counsel obtained and reviewed a significant volume of documents and data to understand the practices at issue in this litigation, the appropriate definition of the Class, and the strengths and weaknesses of the case, both on the merits and at class certification.  Consequently, the parties had a clear understanding of the claims and defenses in this action and were able to appropriately evaluate their positions prior to settlement.  This further weighs in favor of final approval.  *See In re Immune Resp. Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (where counsel had conducted "significant informal discovery and investigation on the matters alleged," this supported a finding that the parties had a "clear view of the strengths and weaknesses," and favored final approval); *Murphy v. City of El Cajon*, No. 18-698, 2019 WL 3936143, \*4 (S.D. Cal. Aug. 19, 2019) (where the parties had litigated for a year, obtained and

reviewed documents, the court found this to weigh in favor of approval); *Yanez v. HL Welding, Inc.*, 2021 WL 3054986, *7 (S.D. Cal. July 20, 2021) ("The use of an experienced private mediator and presence of discovery supports the conclusion that Plaintiffs were armed with sufficient information about the case to broker a fair settlement") (internal quotations omitted).

### D.   The Experience and Views of Counsel Support the Settlement

The views of experienced counsel are entitled to considerable weight when deciding to approve a settlement. *See Blount v. Host Healthcare, Inc.*, No. 21-310, 2022 WL 1094616, *3 (S.D. Cal. April 12, 2022) ("Great weight is accorded to the recommendation of counsel," because "parties represented by competent counsel are better positioned than the courts to produce a settlement that fairly reflects each party's expected outcome in the litigation") (citing cases in support, internal quotations omitted). Class Counsel here are experienced and skilled in consumer class actions, and FCRA actions in particular. (ECF Nos. 46-1, 46-5.) Class Counsel's expertise brought this litigation to the resolution presented here, and their sound support of the settlement weighs in its favor. *See In re Immune Resp. Sec. Litig.*, 497 F. Supp. 2d at 1174 (the parties' "negotiation and adoption of the settlement terms, based on their familiarity with the law in this practice area and the strengths and weaknesses of their respective positions, suggests the reasonableness of the settlement. This factor clearly favors settlement."); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

### E.   The Reaction of the Class to Date has been Positive

Finally, the Settlement Class has reacted well to the settlement so far, with three weeks still remaining in the Notice Period. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004). To date, there have been no objections and no opt-outs

1    received from the 26,833 Class Members.

2         Further, 2,275 Claim Forms have been submitted as of December 12, 2023,

3    for a claims rate of 10%. This, plus the individuals receiving payments

4    automatically, means that over 27% of the Class is expected to receive monetary

5    relief from this settlement. As noted above, the use of a claim form was appropriate

6    here as the group of Class Members required to return the form had at least one

7    tradeline reported that indicated they were deceased, and the form required a simple

8    attestation that they were alive. The current claims rate, with still three weeks

9    remaining in the Claims Period, is in line with those in other approved settlements

10   in this Circuit and is indicative of the strength of the settlement and the notice

11   program. *See Shames v. Hertz Corp.*, No. 07-cv-2174, 2012 WL 5392159, at *14

12   (S.D. Cal. Nov. 5, 2012) (granting final approval of settlement with 4.9% claims

13   rate); *Zepeda v. PayPal, Inc.*, 2017 WL 1113293, at *15-16 (N.D. Cal. March 24,

14   2017) (finding in consumer protection case that a 3.8% claims rate indicated that

15   the email "notice process has been remarkably successful – and the Settlement

16   Class's reaction to the Settlement has been overwhelmingly positive."); *In re*

17   *LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) (approving

18   settlement and finding 5.9% claims rate to indicate an overall positive reaction to

19   the settlement); *White v. Experian Info. Solutions, Inc.*, 803 F. Supp. 2d 1086, 1100

20   (C.D. Cal. 2011) (approving settlement with 5% response rate); *Couser v. Comenity*

21   *Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) (claims rate in consumer class

22   action of 7.7% was "higher than average"); *Rael v. Children's Place, Inc.*, No. 16-

23   370, 2020 WL 434482, *9 (S.D. Cal. Jan. 28, 2020) (noting "consumer class actions

24   tend to result in claims rates in the low single digits" and gathering cases in

25   support); *Tait v. BSH Home Appliances Corp.*, No. 10-cv-0711, 2015 WL 4537463,

26   at *8 (C.D. Cal. July 27, 2015) (approving settlement with 3% claims rate); *Touhey*

27   *v. U.S.*, No. 08-cv-01418, 2011 WL 3179036, at *7-8 (C.D. Cal. July 25, 2011)

28   (approving settlement with 2% claims rate).

1    The positive reaction of the Class to the settlement supports its fairness, and

2    thus this factor weighs in favor of approval.  *See City of Seattle*, 955 F.2d at 1291-

3    96; *Churchill Village*, 361 F.3d at 577; *In re Wash. Public Power Supply Sys. Secs.*

4    *Litig.*, 19 F.3d 1291, 1294-95 (9th Cir. 1994); *Loomis v. Slendertone Dist., Inc.*, No.

5    19-854, 2021 WL 873340, *8 (S.D. Cal. March 9, 2021).

6    **F.    The Rule 23(e) Factors Weigh in Favor of Approval**

7    In addition to the factors traditionally considered by this Circuit, the recently

8    added factors in the Federal Rules weigh in favor of final approval.  Specifically,

9    as made clear in the preliminary approval papers, Counsel and the Class

10    Representative have adequately represented the Class.  (ECF No. 46 at 10-11.)  The

11    settlement was negotiated at arm's length.  (*Id.* at 13.)  The relief provided to the

12    Class is impressive.  *See* Section (B), above.  Finally, the settlement treats Class

13    Members fairly, ensuring that all participating Class Members receive the same

14    recovery.  Some Class Members are required to make a claim, while others receive

15    payment automatically.  However, this process is fair.  All Class Members were the

16    subject of contradictory reporting regarding whether they were deceased.  And,

17    Defendant's policy was the same for all Class Members: Defendant made no effort

18    to resolve the contradictions in its own reporting.  However, Class Members who

19    will receive payment automatically have only a single indication in their file that

20    they are deceased, while Class Members who are required to make a claim have at

21    least one additional indicator, such as a specific creditor reporting them as deceased.

22    Thus, as a condition of receiving a settlement payment, certain Class Members need

23    to make a simple attestation that they are alive.  This treatment is equitable.  *See In*

24    *re WorldCom, Inc. Sec. Litig.*, No. 02-3288, 2004 WL 2591402, *12 (S.D.N.Y.

25    Nov. 12, 2004) (requiring claim form was "important in helping to insure that the

26    settlement fund is distributed to class members who deserve to recover from the

27    fund"); *Sweet v. Cardona*, 641 F. Supp. 3d 814, 832 (N.D. Cal. 2022) (approving a

28    distribution plan that treated class members differently as long as the plan was fair

and holding "[t]his mirrors the fairness inquiry recited by Rule 23(e)(2)(D), which requires the settlement to treat class members equitably relative to one another, not for each class member to receive identical relief."); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420-, 2020 WL 7264559, at *16 (N.D. Cal. Dec. 10, 2020), *aff'd,* No. 21-15120, 2022 WL 16959377 (9th Cir. Nov. 16, 2022) (approving settlement that treated class members differently because "while the distribution plan treats the repealer and non-repealer subgroups differently, it does so on reasonable and equitable grounds."); *Jenson v. First Tr. Corp.*, No. CV 05-3124, 2008 WL 11338161, *9 (C.D. Cal. June 9, 2008) (approving distinctions in plan of allocation as reasonably reflecting likelihood of recovery of subgroups within the class and stating that the distribution plan "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-CV-05944, 2020 WL 1873554, at *10 (N.D. Cal. Mar. 11, 2020) ("it is reasonable to allocate the settlement funds to class members based on . . . the strength of their claims on the merits.") (alterations in original); *True v. American Honda Motor Co.*, 749 F. Supp. 2d 1052, 1067 (C.D. Cal. 2010) ("[D]ifferential treatment of class members may be appropriate where 'the settlement terms are rationally based on legitimate considerations.'"); *see also* ECF No. 46 at 14-16 (citing additional cases).

## III.  CONCLUSION

In sum, the settlement provides meaningful relief to the Settlement Class, both monetary and non-monetary in form, and the Class has reacted positively to the settlement's terms to date.  Based on the foregoing, the Court should grant final approval.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: December 15, 2023

Respectfully submitted,

BERGER MONTAGUE PC

By: /s/E. Michelle Drake
    E. Michelle Drake, *pro hac vice*
    Joseph C. Hashmall, *pro hac vice*

    *Attorneys for Plaintiff*