# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLENE STEINBERG,<br><br>                    Plaintiff,<br><br>v.<br><br>CORELOGIC CREDCO, LLC,<br><br>                    Defendant. | Case No.:  3:22-cv-00498-H-SBC<br><br>**ORDER:**<br><br>**(1) CERTIFYING SETTLEMENT CLASS;**<br><br>**(2) GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; and**<br><br>**(3) GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE INCENTIVE AWARD**<br><br>[Doc. Nos. 54, 55.] |

On December 15, 2023, Plaintiff Marlene Steinberg ("Plaintiff") filed unopposed motions for final approval of class action settlement and for attorneys' fees, costs, and class representative incentive award.  (Doc. Nos. 54, 55.)  On April 8, 2024, the Court held a final approval hearing on the matter.  Sophia Marie Rios appeared on behalf of Plaintiff. Timothy James St. George appeared on behalf of Defendant CoreLogic Credco, LLC ("Defendant").  No class member filed an objection and no objectors appeared at the

hearing.  For the reasons below, the Court grants Plaintiff's motion for final approval of class action settlement, and approves Plaintiff's request for attorneys' fees, costs, and class representative incentive award.

## BACKGROUND

## I.   FACTUAL AND PROCEDURAL BACKGROUND

This is a class action for alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*  (Doc. No. 1-2, Compl.)  Plaintiff alleges that Defendant negligently and willfully violated the FCRA by failing to maintain reasonable procedures to assure the maximum possible accuracy in the preparation of the credit reports it resold regarding the settlement class members, in violation of 15 U.S.C. § 1681e(b). (Id. ¶¶ 72–82.)  Specifically, Plaintiff alleges that Defendant resold inaccurate information from one or more of the nationwide consumer reporting agencies ("CRAs") where the consumer report contained a notation that the consumer was deceased and where either one or two of the CRAs also provided information to Defendant that did not include a notation that the consumer was deceased.  (Id.)  Plaintiff further alleges that Defendant made no effort to determine whether the consumer was in fact deceased prior to publishing the consumer report.  (Id. ¶ 59.)  As a result of Defendant's conduct, Plaintiff alleges that she has suffered concrete financial and pecuniary harm arising from monetary losses relating to credit denials, loss of use of funds, loss of credit and loan opportunities, out-of-pocket expenses, and other related costs.  (Id. ¶ 62.)  Further, Plaintiff alleges that she has suffered concrete harm in the form of financial and dignitary harm arising from the injury to credit rating and reputation.  (Id. ¶ 63.)

On February 24, 2022, Plaintiff filed a class action complaint in the Superior Court of California, County of San Diego against Defendant.  (See Compl.)  On April 12, 2022, Defendant removed this action from the Superior Court of California, County of San Diego to this Court.  (Doc. No. 1.)  On May 23, 2022, Defendant answered the complaint.  (Doc. No. 8.)  On August 25, 2022, the parties participated in an Early Neutral Evaluation Conference before the Magistrate Judge.  (Doc. No. 24.)  The parties did not reach a

settlement agreement.  (Id.)  Following the conference, the parties engaged in discovery efforts, including producing documents and exchanging written discovery requests and responses.  (Doc. No. 46 at 8; Doc. No. 55 at 8.)  During this time, the parties also conducted multiple meet and confers, both telephonically and through written correspondence.  (Id.)

In January 2023, the parties attended a full-day mediation with a private mediator. (Id.)  The parties exchanged mediation statements beforehand.  (Id.)  While a settlement was not reached during this mediation, the parties made significant progress.  (Id.)  The parties continued to engage in settlement negotiations during February and March 2023, ending with a draft term sheet.  (Id.)  The parties then worked to finalize the resolution in a formal settlement agreement.  (Id.)

On August 25, 2023, Plaintiff filed an unopposed motion requesting that the Court grant preliminary approval of the proposed class action settlement, certify the settlement class for settlement purposes, direct notice to the settlement class, and schedule a hearing for final fairness review.  (Doc. No. 46.)  On October 2, 2023, the Court issued an order: (1) certifying the class for settlement purposes; (2) preliminarily approving the class settlement; (3) appointing the class representative, class counsel, and the settlement administrator; (4) approving class notice; and (5) scheduling the final approval hearing. (Doc. No. 49.)  The Court appointed Plaintiff as class representative, Berger Montague PC and Kelly Guzo, PLC as class counsel, and JND Legal Administration as the settlement administrator.  (Id. at 9–10, 17.)

On October 3, 2023, Plaintiff filed a notice of revised settlement class notices.  (Doc. No. 50.)  Specifically, the revised notices alerted class members of the possibility that the final approval hearing may be held telephonically and directed the class members to the settlement class website for further information.  (Id., Exs. B, C, F.)  On October 4, 2024, the Court approved the revised class notices.  (Doc. No. 52.)

On December 15, 2023, Plaintiff filed the present unopposed motions for final approval of class action settlement and for attorneys' fees, costs, and class representative

incentive award.  (Doc. Nos. 54, 55.)  On February 12, 2024, the Court ordered the parties to file supplemental briefing on the parties' proposed *cy pres* distributions.  (Doc. No. 58.) On March 1, 2024, Plaintiff filed unopposed supplemental briefing on the issue.  (Doc. No. 60.)

## II.   SETTLEMENT AGREEMENT

On August 25, 2023, the parties finalized the settlement agreement.  (Doc. No. 46-2, Settlement Agreement ("SA").)  The settlement class is defined as:

> all persons residing in the United States of America (including its territories and Puerto Rico) who were subject: (1) of a consumer report resold by Defendant to a third party within the time period of January 1, 2021 and continuing through May 2, 2023, (2) where the consumer report contained a notation that the consumer was deceased, and (3) either one or two of the nationwide consumer reporting agencies (Experian, Trans Union and Equifax) provided information to Defendant that did not include a deceased notation.

(Id. at 7, ¶ 2.22.)  Excluded from the class are "counsel of record (and their respective law firms) for any of the Parties, employees of Defendants, and employees of the Federal judiciary."  (Id.)  The parties identified approximately 26,833 settlement class members at issue.  (Doc. No. 55 at 9.)

Under the proposed settlement agreement, Defendant will pay the settlement amount of $5,695,000.  (SA at 14, ¶ 4.3.1.)  Defendant will also be required to improve its reporting practices to more clearly state that: (1) the data it is reporting is precisely the data it received from the CRAs; and (2) Defendant cannot evaluate its content.  (Id. at 16–17, ¶¶ 4.3.2.1–4.3.2.2.)  Moreover, Defendant will be required to further identify to recipients of the information how to contact Defendant if they believe the information being resold by Defendant is inaccurate or incomplete.  (Id.)  Defendant continues to deny any wrongdoing and the settlement agreement does not constitute an admission or concession of liability, wrongdoing, or the lack of merit of any defense or Rule 23 argument by Defendant.  (Id. at 3–4.).  The proposed settlement agreement dismisses Defendant with prejudice and releases Defendant from all claims arising from the settlement class.  (Id. at 4, 18–20, ¶¶ 4.4.1–4.4.4.)

Settlement class members will each receive pro rata payments from the fund.  (<u>Id.</u> at 14, ¶ 4.3.1.1.)  Settlement class members receive their payment by either: (1) qualifying as an automatic payment settlement class member; or (2) submitting a claims form either by mail or via the settlement website.  (<u>Id.</u> at 14–15, ¶¶ 4.3.1.1, 4.3.1.3.)  Settlement class members meet the automatic payment requirements if: (1) the settlement class member was the subject of a consumer report resold by Defendant to a third party during the settlement class period that included information from at least one CRA, but not all of the reporting CRAs, where the score segment of the report indicated that the consumer was deceased; and (2) that the CRA's report does not contain a deceased notation within a tradeline.  (<u>Id.</u> at 14–15, ¶ 4.3.1.2.)  The remaining settlement class members include members who have at least one report with a tradeline stating they are deceased, but who also have reports from at least one other CRA that does not contain such tradeline.  (<u>Id.</u> at 15–16, ¶ 4.3.1.3.)  Approximately 4,622 class members will receive automatic payments.  (Doc. No. 55 at 9; <u>see</u> SA at 14–15, ¶ 4.3.1.2.)  Class members who are entitled to an automatic payment and class members who make claims will all receive equal payments from the fund.  (SA at 27–28, ¶ 5.3.1.)  The amount of money each class member will receive is dependent upon the total number of claims filed.  (Doc. No. 55 at 10.)

Under the terms of the proposed settlement agreement, any settlement checks that are not cashed, or funds remaining as a result of checks that were undeliverable, will be evenly donated to the Homeownership Preservation Foundation and Habitat for Humanity as *cy pres* recipients, but cannot be used for purposes of litigation.  (SA at 28, ¶ 5.3.1.)  No portion of the settlement fund will revert to Defendant under any circumstance.  (<u>Id.</u>)

Class counsel is requesting $1,423,750, or 25% of the settlement fund, in attorneys' fees; $16,995.49 in reimbursement for documented out-of-pocket expenses; $118,000 in settlement administration costs; and $7,500 as an incentive payment to the class representative.  (Doc. No. 54 at 7, 9–10; <u>see</u> SA at 26, ¶ 5.3.)

/ / /

/ / /

### III.   CLASS NOTICE

On August 25, 2023, Defendant provided the settlement administrator with a mailing list containing the names, mailing addresses, dates of birth, and social security numbers for 26,876 potential class members.  (Doc. No. 55-1, Declaration of Ryan Bahry ("Bahry Decl.") ¶ 6.)  Defendant also provided the settlement administrator with information indicating which class members should receive an automatic payment as opposed to those required to file a claim form to participate.  (Id.)  On August 29, 2023, the settlement administrator received a supplemental mailing list containing the same information for an additional 138 potential class members, all of whom would need to file a claim form to participate.  (Id.)  After receiving the mailing lists, the settlement administrator processed and updated the class member contact information using the National Change of Address Database.  (Id. ¶ 7.)

On September 1, 2023, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, Defendant served upon the appropriate federal and state officials a notice of the proposed settlement of this action.  (Id. ¶¶ 4–5; Ex. A to Bahry Decl.)

On November 1, 2023, the settlement administrator activated the settlement website and a toll-free telephone line for class members with questions.  (Id. ¶¶ 16, 18.)  As of December 12, 2023, the settlement website tracked 1,716 unique users with 5,826 page views, and the toll-free number received 459 incoming calls.  (Id.)

On November 6, 2023, the settlement administrator mailed notices via USPS first-class mail to all 26,833 class members, along with a claim form where applicable.  (Id. ¶ 11.)  That same day, the settlement administrator e-mailed notice to 26,124 available e-mail addresses associated to a total of 13,382 class members, along with a claim form where applicable.  (Id. ¶ 8.)

As of December 12, 2023, the settlement administrator tracked 2,556 mailed notices that were returned as undeliverable.  (Id. ¶ 12.)  Of those 2,556 undeliverable notices, 393 were re-mailed to forwarding addresses provided by USPS.  (Id.)  For the remaining undeliverable notices, the settlement administrator conducted additional research and

received updated information for 851 class members.  (Id.)  The settlement administrator re-mailed notices to 851 of those class members, of which thirty-four were returned as undeliverable.  (Id.)  Twelve of those thirty-four undeliverable notices were re-mailed to forwarding addresses provided by USPS.  (Id.)  Additionally, as of December 12, 2023, the settlement administrator tracked 1,243 class members whose e-mail notice attempts were unsuccessful.  (Id. ¶ 10.)

On December 6, 2023, the settlement administrator sent a reminder notice to those class members in the claim form group who had not yet returned a claim form.  (Id. ¶¶ 14, 15.)  As of December 12, 2023, 25,944 class members were mailed or e-mailed a notice that was not returned as undeliverable, representing 96.7% of the total class.  (Id. ¶ 13.)

As of February 12, 2024, the settlement administrator has received three timely requests for exclusions from class members and one timely request for exclusion from a non-class member.  (Doc. No. 57-1, Supplemental Declaration of Ryan Bahry ("Bahry Supp. Decl.") ¶ 5.)  Further, as of February 12, 2024, the settlement administrator has not received, and is not aware of, any objections to the settlement.  (Id. ¶ 7.)  Additionally, as of February 12, 2024, the settlement administrator has received 4,910 eligible claim forms submitted by class members.  (Id. ¶ 10.)

## DISCUSSION

## I.   FINAL CERTIFICATION OF SETTLEMENT CLASS

The Court previously found that all the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) had been met in its order certifying the class.  (Doc. No. 49.)  Given that no substantive issues concerning class certification have been raised since the Court granted preliminary approval of the settlement class, the Court incorporates its prior analysis by reference, (id. at 5–9), and finds that final class certification for settlement is appropriate.

The Court certifies the following as the class members: all persons residing in the United States of America, including its territories and Puerto Rico, who were the subject: (1) "of a consumer report resold by Defendant to a third party within the time

period of January 1, 2021 and continuing through May 2, 2023"; (2) "where the consumer report contained a notation that the consumer was deceased"; and (3) "either one or two of the nationwide consumer reporting agencies (Experian, Trans Union and Equifax) provided information to Defendant that did not include a deceased notation." (SA at 7, ¶ 2.22.) Excluded from the class are "counsel of record (and their respective law firms) for any of the Parties, employees of Defendants, and employees of the Federal judiciary." (Id.)

## II.  FINAL APPROVAL OF CLASS ACTION SETTLEMENT

District courts must approve class action settlements.  Fed. R. Civ. P. 23(e). Specifically, Federal Rule of Civil Procedure 23(e)(1)–(5) requires a district court to: (1) ensure notice is sent to all class members; (2) hold a hearing and make a finding that the settlement is fair, reasonable, and adequate; (3) confirm that the parties seeking approval file a statement identifying the settlement agreement; and (4) be shown that class members were given an opportunity to object.  Fed. R. Civ. P. 23(e)(1)–(5).  Class counsel filed the proposed settlement agreement on August 25, 2023, (Doc. No. 46-2), and class members were given an opportunity to object on or before January 5, 2024.  (Bahry Decl. ¶ 22.)  The Court did not receive any objections to the proposed settlement agreement. Following the final fairness hearing, the Court evaluates the adequacy of notice and conducts its final review of the settlement.

### A.  Adequacy of Notice

Adequate notice of the class settlement must be provided under Federal Rule of Civil Procedure 23(e).  "While Rule 23 requires that 'reasonable effort' be made to reach all class members, it does not require that each individual actually receive notice." Winans v. Emeritus Corp., No. 13-cv-03962-HSG, 2016 WL 107574, at *3 (N.D. Cal. Jan. 11, 2016); see also Silber v. Mabon, 18 F.3d 1449, 1453–54 (9th Cir. 1994) (explaining that the district court need not ensure all class members receive actual notice, only that "the best practicable notice" is given).

The Court previously reviewed the content of the class notice, the method for

providing notice, and the procedure for class members to opt out or object at the preliminary approval stage and found each to be satisfactory under Rule 23(c)(2)(B) and Rule 23(c)(3). (Doc. No. 49 at 14–16; Doc. No. 52 at 2.) On August 25 and 29, 2023, the settlement administrator received the list of names and contact information for the unique class members from Defendant. (Bahry Decl. ¶ 6.) Defendant also provided the settlement administrator with information indicating which class members should receive an automatic payment as opposed to those required to file a claim form to participate. (Id.) On November 6, 2023, after processing and updating the class member list using the National Change of Address Database, the settlement administrator mailed the class notice via USPS first-class mail to all 26,833 class members, along with a claim form where applicable. (Id. ¶ 7, 11.) That same day, the settlement administrator e-mailed notice to 26,124 available e-mail addresses associated to a total of 13,382 class members, along with a claim form where applicable. (Id. ¶ 8.) The class notice informed class members of the January 5, 2024, deadline for class members to submit a request for exclusion or object to the settlement. (Id. ¶ 22.) On December 6, 2023, the settlement administrator sent a reminder notice to those who were in the claim form group and had not yet returned a claim form. (Id. ¶¶ 14, 15.) The settlement administrator represents that 25,944 class members were mailed or e-mailed a notice that was not returned as undeliverable, representing 96.7% of the total class. (Id. ¶ 13.) The settlement administrator established a toll-free telephone number where class members could call the settlement administrator and make inquiries regarding the settlement. (Id. ¶ 18.) As of February 12, 2024, the settlement administrator has received three timely requests for exclusions from class members and one timely request for exclusion from a non-class member. (Bahry Supp. Decl. ¶ 5.) Further, as of February 12, 2024, the settlement administrator has not received, and is not aware of, any objections to the settlement. (Id. ¶ 7.) Additionally, as of February 12, 2024, the settlement administrator has received 4,910 eligible claim forms submitted by class members. (Id. ¶ 10.)

Given the above, the Court finds that the settlement administrator provided adequate

notice per the Court's order, (Doc. No. 49), and satisfied Rule 23(e).

### B.   Final Fairness Determination

A proposed class settlement can only be approved if "it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  In making this determination, district courts in the Ninth Circuit consider several factors, including: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement." Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003) (quotations omitted).  A proposed settlement must additionally meet the factors enumerated in Federal Rule of Civil Procedure 23(e)(2)(A)–(D).

"In deciding whether to approve a proposed settlement, the Ninth Circuit has a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" In re Heritage Bond Litigation, No. 2-ML-01475 DT, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005) (quoting Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1991)); see also Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009) ("This circuit has long deferred to the private consensual decision of the parties.").  Further, the Ninth Circuit favors deference "to the private consensual decision of the [settling] parties," particularly when the parties are represented by experienced counsel. Rodriguez, 563 F.3d at 965.  Nevertheless, when "class counsel negotiates a settlement agreement before the class is even certified," settlement approval "requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." Dennis v. Kellogg Co., 697 F.3d 858, 864 (9th Cir. 2012) (quotation marks and citations omitted).  As such, courts must also scrutinize proposed settlements for "evidence of collusion or other conflicts of interest." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946–47 (9th Cir. 2011).

/ / /

1     1. <u>The Strength of Plaintiff's Case and the Risk of Further Litigation</u>

2    Both parties have expended significant time, effort, and resources supporting their

3 positions, and they would continue to do so if the settlement failed to receive final approval.

4 Class counsel represents that while Plaintiff's claims are meritorious, continuing to litigate

5 the case would pose significant risks for the class and the class members' meaningful relief

6 under the proposed settlement agreement.  (Doc. No. 55 at 13–14.)  In particular, class

7 counsel considered the risks associated with the issue of willfulness.  (<u>Id.</u>)  The FCRA is

8 not a strict liability statute.  Rather, a plaintiff can recover under the FCRA only when the

9 defendant has acted negligently or willfully.  15 U.S.C. § 1681.  When the defendant's

10 violation was at most negligent, recovery is limited to actual damages.  <u>See</u> 15 U.S.C.

11 §§ 1681n(a)(1); 1681o(a)(1).  Therefore, in order to obtain monetary recovery that is

12 certain for all class members, Plaintiff would be required to prove that not only Defendant

13 violated the FCRA, but that Defendant did so willfully.  <u>See id.</u>  Further, the issue of

14 willfulness is often a question for the jury.  <u>See</u> <u>Guimond v. Trans Union Credit Info. Co.</u>,

15 45 F.3d 1329, 1333 (9th Cir. 1995) ("The reasonableness of the procedures and whether

16 the agency followed them will be jury questions in the overwhelming majority of cases.").

17 These considerations led class counsel to conclude that a timely settlement would be best

18 for everyone involved.  (Doc. No. 55 at 13–14); <u>see</u> <u>Linney v. Cellular Alaska P'ship</u>, 151

19 F.3d 1234, 1242 (9th Cir. 1998) ("[I]t is the very uncertainty of outcome in litigation and

20 avoidance of wasteful and expensive litigation that induce consensual settlement." (internal

21 quotation marks and citation omitted)).  The Court concludes that the strength of the

22 parties' positions as well as the risk of further litigation weigh in favor of approving the

23 settlement.

24     2. <u>The Settlement Amount</u>

25    In determining whether a settlement agreement is substantively fair to the class,

26 courts must balance the value of the plaintiffs' expected recovery against the value of the

27 settlement offer.  <u>In re Tableware Antitrust Litig.</u>, 484 F. Supp. 2d 1078, 1080 (N.D.

28 Cal. 2007).  The Ninth Circuit has explained that "the proposed settlement is 'not to be

judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.'" <u>Martinez v. Semi-Tropic Coop. Gin & Almond Huller, Inc.</u>, No. 19-cv-01581-JLT-CDB, 2023 WL 3569906, at *14 (E.D. Cal. May 19, 2023) (emphasis removed) (quoting <u>Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco</u>, 688 F.2d 615, 625 (9th Cir. 1982) (citations omitted)).

Here, the proposed settlement agreement provides for a settlement fund of $5,695,000. (SA at 14, ¶ 4.3.1.)  Plaintiff sought statutory damages under the FCRA, which provides for damages of between $100 and $1,000 for each willful violation. (<u>See</u> Compl. at 14); 15 U.S.C. § 1681n(a)(1).  Class counsel represents that the estimated net recovery is approximately $606 per eligible class member, which is over the mid-point of the range of statutory recovery.  (Doc. No. 55 at 15.)  The recovery that each settlement class member is estimated to receive is also in line with other approved FCRA class action settlements.  <u>See, e.g.</u>, <u>In re Toys R Us-Delaware, Inc.–Fair & Accurate Credit Transactions Act (FACTA) Litig.</u>, 295 F.R.D. 438, 453–4 (C.D. Cal. 2014) ("A $5 or $30 award, therefore, represents 5% to 30% of the recovery that might have been obtained. This is not a *de minimis* amount.  Given the likelihood that plaintiffs would have been unable to prove actual damages and the risk that they would have been unable to prove willfulness and recover any damages at all, the court finds that the amount of the settlement weighs in favor of approval.").  Further, the proposed settlement agreement provides for non-monetary relief, including changes to Defendant's practices and policies relating to deceased indicator reporting.  <u>See</u> <u>Patel v. Trans Union, LLC</u>, No. 14-cv-00522-LB, 2018 WL 1258194, at *6 (N.D. Cal. March 11, 2018) ("When determining the value of a settlement, courts consider the monetary and non-monetary benefits that the settlement confers." (citations omitted)).

This settlement is a good result for the class and eliminates the risks, expenses, and delay associated with continued litigation.  Moreover, the settlement amount is the result of arm's length negotiation conducted by experienced counsel and an experienced mediator.  Accordingly, the Court concludes that the amount offered in settlement weighs

in favor of granting final approval of the settlement.

### 3. The Extent of Discovery Completed and the Stage of the Proceedings

Prior to reaching the settlement agreement, the parties engaged in informal and formal discovery. (Doc. No. 46 at 8; Doc. No. 55 at 8.) During that time, Defendant produced and Plaintiff reviewed over 5,000 pages of documents regarding the credit reports at issue in the case, including exemplar report data. (Id.) On August 25, 2022, the parties participated in an Early Neutral Evaluation Conference before the Magistrate Judge. (Doc. No. 24.) In January 2023, Plaintiff represents that the parties engaged in a full-day mediation with a private mediator. (Doc. No. 46 at 8; Doc. No. 55 at 8.) While a settlement was not reached during this mediation, the parties did make significant progress. (Id.) The parties continued to engage in settlement negotiations during February and March 2023, ending with a draft term sheet. (Id.) The parties then worked to finalize the resolution in a formal settlement agreement. (Id.) Considering this history, the record supports the conclusion that the parties conducted sufficient discovery to allow them to make an informed decision to settle this case. Yanez v. HL Welding, Inc., No. 20-cv-01789-MDD, 2021 WL 3054986, at *7 (S.D. Cal. July 20, 2021) ("The use of an experienced private mediator and presence of discovery supports the conclusion that Plaintiffs were armed with sufficient information about the case to broker a fair settlement." (internal quotations omitted)); Ontiveros v. Zamora, 303 F.R.D. 356, 371 (E.D. Cal. 2014) ("[T]he parties' apparent careful investigation of the claims and their resolution in consideration of the views of a third party mediator weigh in favor of settlement.").

### 4. The Experience and Views of Counsel

Class counsel are experienced and skilled in consumer class actions and have significant prior experience in litigating FCRA cases. (See Doc. Nos. 46-1, 46-5.) Class counsel have a good understanding of the issues and have actively litigated this case through informal and formal discovery, mediation, and settlement negotiations. (Id.) Further, class counsel recommends the settlement as fair, reasonable, adequate, and in the best interests of the class. (See Doc. No. 55 at 18.) Class counsel's expertise and sound

support of the settlement weighs in favor of granting final approval.  See In re Immune Resp. Sec. Litig., 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (The parties' "negotiation and adoption of the settlement terms, based on their familiarity with the law in this practice area and the strengths and weaknesses of their respective positions, suggests the reasonableness of the settlement.  This factor clearly favors settlement."); see also Blount v. Host Healthcare, Inc., No. 21-cv-00310-MMA, 2022 WL 1094616, at *3 (S.D. Cal. April 12, 2022) ("Great weight is accorded to the recommendation of counsel," because "parties represented by competent counsel are better positioned than the courts to produce a settlement that fairly reflects each party's expected outcome in the litigation" (citations and internal quotations omitted)).

> 5.   The Reaction of the Class Members to the Proposed Settlement

The parties identified approximately 26,833 class members.  (Doc. No. 55 at 9.)  As of February 12, 2024, the settlement administrator has received three timely requests for exclusions from class members and one timely request for exclusion from a non-class member.  (Bahry Supp. Decl. ¶ 5.)  Further, as of February 12, 2024, the settlement administrator has not received, and is not aware of, any objections to the settlement.  (Id. ¶ 7.)  The complete lack of objections and minimal exclusions indicates the adequacy of the settlement.  See Benitez v. W. Milling, LLC, No. 18-cv-01484-SKO, 2020 WL 3412725, at *7 (E.D. Cal. June 22, 2020) ("[I]t is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." (citation omitted)).

Moreover, as of February 12, 2024, 4,910 eligible claim forms have been received from class members, for a claims rate well over 10%.  (Bahry Supp. Decl. ¶ 10.)  This is in line with other approved class action settlements in this Circuit.  See e.g., Shames v. Hertz Corp., No. 07-cv-02174-MMA, 2012 WL 5392159, at *14 (S.D. Cal. Nov. 5, 2012) (granting final approval of settlement with 4.9% claims rate); Zepeda v. PayPal, Inc., No. 10-cv-02500-SBA, 2017 WL 1113293, at *15–*16 (N.D. Cal. March 24, 2017)

(finding in consumer protection case that a 2.8% claims rate indicated that the email "notice process has been remarkably successful—and the Settlement Class's reaction to the Settlement has been overwhelmingly positive"); <u>Couser v. Comenity Bank</u>, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) (claims rate in consumer class action of 7.7% was "higher than average"); <u>Rael v. Children's Place, Inc.</u>, No. 16-cv-00370-GPC, 2020 WL 434482, at *9 (S.D. Cal. Jan. 28, 2020) (noting "consumer class actions tend to result in claims rates in the low single digits" and gathering cases in support); <u>Tait v. BSH Home Appliances Corp.</u>, No. 10-cv-00711-DOC, 2015 WL 4537463, at *8 (C.D. Cal. July 27, 2015) (approving settlement with 3% claims rate); <u>Touhey v. U.S.</u>, No. 08-cv-01418-VAP, 2011 WL 3179036, at *7–*8 (C.D. Cal. July 25, 2011) (approving settlement with 2% claims rate).  Accordingly, the class members' reaction weighs in favor of granting final approval.

### 6.    No Subtle Signs of Collusion

The collusion inquiry addresses the possibility the agreement is the result of either overt misconduct by the negotiators or improper incentives of certain class members at the expense of other members of the class.  <u>Staton</u>, 327 F.3d at 960.  The Ninth Circuit has articulated the following as the "subtle signs" of collusion, including: (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund."  <u>In re Bluetooth</u>, 654 F.3d at 947 (internal quotations and citations omitted).

Here, there is no evidence of overt misconduct nor any indication of collusion.  The requested attorneys' fees are reasonable considering the record and extensive time spent by class counsel on this matter, and the results achieved.  <u>See</u> <u>infra</u> Section III.A.  Similarly, the $7,500 class representative incentive award is fair and reasonable and does not appear to be the result of collusion.  <u>See</u> <u>infra</u> Section III.C.  Settlement class members will receive

meaningful monetary distributions even after deducting awards, costs, and fees.  (Doc. No. 55 at 14–15.)  The settlement also provides meaningful non-monetary relief in the form of practice changes that directly address the claims at issue.  (Id. at 16–17.)  Further, no portion of the settlement fund will revert to Defendant.  (Id. at 10.)  The proposed settlement agreement resulted from significant arm's length negotiation with the assistance of a private mediator.  (Id. at 8; Doc. No. 46 at 13); see Couser, 125 F. Supp. 3d at 1042 ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair.").  As such, the absence of collusion from the record also supports approval of the proposed settlement.

After considering all applicable factors, the Court concludes the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); Staton, 327 F.3d at 960.

## III.   ATTORNEYS' FEES, COSTS, AND INCENTIVE PAYMENT TO CLASS REPRESENTATIVE

Having granted final approval of the settlement, the Court now turns to class counsel's request for attorneys' fees, costs, and an incentive payment to the class representative.  Here, class counsel seeks $1,423,750, or 25% of the settlement fund, in attorneys' fees; $16,995.49 in reimbursement for documented out-of-pocket expenses; $118,000 in settlement administration costs; and $7,500 as an incentive payment to the class representative.  (Doc. No. 54 at 7, 9–10.)

### A.   Attorneys' Fees

Pursuant to Federal Rule of Civil Procedure 23(h), "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  In re Bluetooth, 654 F.3d at 941.

With respect to the attorneys' fees, "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark" in common fund cases.  Vasquez v. Coast Valley Roofing, Inc., 266

F.R.D. 482, 491 (E.D. Cal. 2010); <u>Stanger v. China Elec. Motor, Inc.</u>, 812 F.3d 734, 738 (9th Cir. 2016). This "benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." <u>Six Mexican Workers v. Arizona Citrus Growers</u>, 904 F.2d 1301, 1311 (9th Cir. 1990). Regardless of whether courts use the percentage approach or the lodestar method, the main inquiry is whether the end result is reasonable. <u>Powers v. Eichen</u>, 229 F.3d 1249, 1258 (9th Cir. 2000). The Ninth Circuit has identified several factors that may be relevant in determining if the award is reasonable, including: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases. <u>See</u> <u>Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043, 1048–50 (9th Cir. 2002).

Here, class counsel requests an award of $1,423,750 in attorneys' fees to be paid from the settlement fund. (Doc. No. 54 at 7.) The requested amount of attorneys' fees is 25% of the total settlement fund of $5,695,000. (<u>Id.</u>) This is in line with the Ninth Circuit's 25% benchmark for common fund cases. <u>See</u> <u>In re Bluetooth</u>, 654 F.3d at 942 (noting that "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award" in class action settlements). Moreover, the overall award class counsel achieved for the class was favorable, and the risks associated with continuing to litigate this case were real and substantial. <u>See</u> <u>supra</u> Section II.B.1–2. Further, class counsel took this case on a contingent fee basis, bearing the entire risk and cost of litigation. (Doc. No. 54 at 16.) Class members received notice of the requested attorneys' fees award, and no class members objected. (Doc. No. 54 at 18; Bahry Supp. Decl. ¶ 7.) The requested fee award is in line with what other district courts in this Circuit have awarded in cases in which class counsel took the case on contingency and no class member objected to the settlement. <u>See, e.g.</u>, <u>Ochinero v. Ladera Lending, Inc.</u>, No. 19-cv-1136-JVS-ADSx, 2021 WL 4460334, at *8 (C.D. Cal. July 19, 2021) (approving 33% fee award from common fund settlement in which counsel took the case on contingency and no class member objected).

Finally, as a cross-check, class counsel represents that the fees calculated under the lodestar method would be $552,303.  (Doc. No. 54-1, Declaration of E. Michelle Drake ("Drake Decl.") ¶ 9; Doc. No. 54-2, Declaration of Kristi C. Kelly ("Kelly Decl.") ¶ 20.) Thus, the amount class counsel requests is approximately 2.58 times what class counsel would receive under the lodestar method.  See In re Bluetooth, 654 F.3d at 944–45 (encouraging district courts to cross-check their calculations under the percentage-of-recovery method against the lodestar method).  A multiplier of 2.58 is well within the accepted range for common fund cases in which class counsel took the case on a contingency fee arrangement.  See Vizcaino, 290 F.3d at 1051 & n.6 (affirming multiplier of 3.65x in a common fund case, and noting that vast majority of common fund cases result in a multiplier of between one and four); Reyes v. Experian Info. Sols., Inc., 856 F. App'x 108, 111 (9th Cir. 2021) (reversing district court that awarded less than 25% in FCRA class action, when "[a]ssuming a 25% award, the lodestar crosscheck returns a multiplier of 2.88").  Accordingly, the Court concludes that the request is reasonable and grants class counsel $1,423,750 in attorneys' fees.

**B.    Litigation Expenses**

Class counsel represents to the Court that they incurred litigation expenses in the amount of $16,995.49.  (Doc. No. 54 at 7, 9, 21; Drake Decl. ¶ 7; Kelly Decl. ¶ 22.)  After reviewing class counsel's declarations regarding expenses, the Court concludes that the requested litigation expenses are reasonable, and grants class counsel's request for these fees.

Class counsel also requests that the Court approve settlement administration costs in the amount of $118,000.  (Doc. No. 54 at 10, 21.)  Subject to Court approval, the parties have agreed that the settlement administrator's expenses for its work in preparing and distributing notice to the settlement class, securing and maintaining the settlement website and phone support, vetting of claim forms, eventual preparation and distribution of settlement payments, and other administrative tasks should be deducted from the settlement fund as well.  (Id. at 10.)  While the requested amount is marginally higher than the amount

quoted in Plaintiff's preliminary approval papers, (Doc. No. 46 at 12), the parties note that they opted for a more robust reminder notice to ensure class members had the opportunity to file claims in advance of the deadline. (Doc. No. 54 at 10 n.4.) Further, the contemplated deduction of this expense from the settlement fund was included in the notice to the settlement class and no objections have been received. (Id. at 10.) The Court finds the settlement administration costs reasonable and approves payment of $118,000 from the settlement fund to the settlement administrator.

### C. Incentive Award to Class Representative

Class counsel requests a $7,500 incentive award for the class representative. "The criteria courts may consider in determining whether to make an incentive award include: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." Cox v. Clarus Mktg. Grp., LLC, 291 F.R.D. 473, 483 (S.D. Cal. 2013) (citations omitted).

After reviewing these factors, the Court concludes that the requested incentive award is fair and reasonable. The $7,500 incentive award is well within the acceptable range awarded in similar cases. See, e.g., Fulford v. Logitech, Inc., No. 08-cv-02041-MMC, 2010 WL 807448, at *3 n.1 (N.D. Cal. 2010) (collecting cases awarding incentive payments ranging from $5,000 to $40,000); Gutierrez-Rodriguez v. R.M. Galicia, Inc., No. 16-cv-00182-H-BLM, 2018 WL 1470198, at *7 (S.D. Cal. Mar. 26, 2018) (approving $7,500 incentive award). Plaintiff played an active role in this matter and regularly communicated with class counsel throughout litigation and settlement. (Doc. No. 45 at 9–10; Kelly Decl. ¶¶ 26–28.) Specifically, Plaintiff provided information for the complaint, reviewed the pleading prior to filing, responded to written discovery requests, produced over 500 pages of documents for production, and reviewed and approved the settlement agreement. (Id.) Further, Plaintiff's documents and discovery responses

included sensitive information about Plaintiff's personal finances, including credit reports and mortgage statements.  (Doc. No. 54 at 10.)  Considering Plaintiff's participation, as well as acceptable ranges of incentive awards in similar cases, the Court approves the $7,500 incentive award for Plaintiff.

### D.  *Cy Pres* Recipients

Finally, the Court approves the parties' choice in *cy pres* recipients.  "[C]y pres distributions must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members."  See Nachshin v. AOL, LLC, 663 F.3d 1034, 1039 (9th Cir. 2011) (citing Six Mexican Workers, 904 F.2d at 1307).  In this instance, the settlement agreement provides that any remaining settlement funds will be donated evenly to the Homeownership Preservation Foundation and Habitat for Humanity.  (SA at 28, ¶ 5.3.1.)

The proposed *cy pres* recipients'—the Homeownership Preservation Foundation and Habitat for Humanity—missions and work have a sufficient nexus to the objectives of the underlying statute and the interests of the class members.   The Homeownership Preservation Foundation and Habitat for Humanity provide assistance in the form of education, counseling, and advocacy to individuals facing obstacles to home ownership, including credit-related barriers.  (Doc. No. 60 at 3–4.)  Defendant is a nationwide leading provider of housing-related credit reports.  (Compl. ¶ 18; Doc. No. 60 at 3.)  Moreover, the credit report at issue in this case was generated in relation to Plaintiff's application to refinance her mortgage.  (Id. ¶¶ 55–56.)  Similarly, Defendant issued credit reports for class members in the process of buying and refinancing home mortgages.  (Doc. No. 60 at 3.)  Accordingly, the proposed recipients' missions and work relating to homeownership and financial education and advocacy is sufficiently close to the interests of the class members here.  See, e.g., In re Midland Credit Mgmt. Inc., Tel. Consumer Prot. Act Litig., No. 10-cv-02261-MMA (MDD), 2018 WL 4927982, at *3 (S.D. Cal. Oct. 10, 2018) (approving *cy pres* recipient focused on "personal financial literacy regarding credit and debt" in Telephone Consumer Protection Act action); Beaver v. Tarsadia Hotels, No. 11-cv-01842-

GPC-KSC, 2020 WL 1139662, at *2 (S.D. Cal. Mar. 9, 2020) ("[T]he Court concludes that there is a nexus between the *cy pres* recipient[], whose work protects and educates homebuyers, and [Interstate Land Sales Full Disclosure Act's] objective of protecting homebuyers from unscrupulous developers."). Furthermore, the underlying statute in this action—the FCRA—was enacted to "to protect consumers' concrete interests in avoiding the very real-world harms that result from inaccurate credit reporting—such as the inability to obtain credit." Ramirez v. TransUnion LLC, 951 F.3d 1008, 1025 (9th Cir. 2020), rev'd on other grounds, 594 U.S. 413 (2021). Thus, the Homeownership Preservation Foundation and Habitat for Humanity, both of which provide assistance for individuals seeking housing-related credit, are in line with the objectives of the FCRA.

Given that the proposed recipients have a sufficient nexus to the objectives of the FCRA and the interests of the class members, the Homeownership Preservation Foundation and Habitat for Humanity are appropriate organizations to receive *cy pres* distributions in the settlement of this action.

## CONCLUSION

The Court has jurisdiction over the subject matter of this action and all parties to the action, including the settlement class members. First, the Court certifies the settlement class and grants final approval of the settlement. All persons who satisfy the class definitions and did not opt out of the settlement classes by the deadline are class members bound by this Order. The form and method of notice satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution. Second, the Court grants class counsel $1,423,750 in attorneys' fees and $16,995.49 in documented out-of-pocket expenses. The Court also grants $118,000 to the settlement administrator. Further, the Court grants Plaintiff an incentive award of $7,500. The attorneys' fees, costs, and incentive award will be paid out of the settlement fund.

/ / /

/ / /

/ / /

The Court reserves jurisdiction over the implementation, administration, and enforcement of this settlement.  The Court dismisses the action with prejudice, and no cost shall be awarded other than those specified in this Order or provided by the settlement agreement.  The Clerk of the Court is instructed to close this case.

**IT IS SO ORDERED.**

DATED: April 9, 2024

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

3:22-cv-00498-H-SBC